UNITED STATES of America,
Plaintiff,

v.

ESTATE of Thomas S. DONNELLY, Sr.,
Oscar A. Carlson and Genevieve S.
Carlson, Defendants.

Civ. No. 29428.

United States District Court
E. D. Michigan, S. D.

Oct. 6, 1967.

Lawrence Gubow, U. S. Atty., Joseph F. Deeb, Jr., Asst. U. S. Atty., Detroit, Mich., for plaintiff.

Daniel N. Pevos, Pevos & Pevos, Detroit, Mich., for defendants.

OPINION and ORDER

KAESS, District Judge.

*Facts:*

This is a suit in equity filed under Sections 7401 and 7403 of the Internal Revenue Act of 1954. The bill of complaint seeks to foreclose certain real property located in Livingston County, Michigan, arising out of a deficiency assessment of income tax against Thomas S. Donnelly, Sr., and to give priority over the rights of defendants Oscar A. Carlson and Genevieve S. Carlson, who are subsequent purchasers of the property in good faith and for value.

The facts are not in dispute and are as follows: On April 16, 1949, Thomas S. Donnelly, Sr. and Jessie C. Donnelly, his wife, acquired by warranty deed certain property located in Livingston County, Michigan. Said deed was properly recorded in Livingston County. On June 23, 1950, the Tax Court of the United States determined that Thomas S. Donnelly, Sr., individually, was liable for income taxes and penalties for the years 1943, 1944, 1945, in the amount of about $26,000.00. Assessments of the taxes were made and notice of the tax liens was filed with the *Wayne* County Register of

Deeds on November 28, 1950. On November 29, 1950 a notice of tax liens was also filed by Internal Revenue Service with the Clerk of the United States District Court for the Eastern District of Michigan, Southern Division, at Detroit, Michigan.

On February 14, 1956, Donnelly executed a statutory waiver extending the time of collection of the tax liabilities for a period of five years.

August 11, 1956 the Uniform Federal Tax Lien Registration Act became effective in Michigan.[1] Subsequently a "Certificate of Non-attachment of Federal Tax Lien", referring to separate property of Donnelly located in Detroit, Michigan, was filed in September, 1956, and was attached to those notices previously filed with Wayne County Register of Deeds and Clerk of United States District Court in 1950. Jessie C. Donnelly, wife of the taxpayer, died on May 28, 1960 and her death was recorded with the Livingston County Register of Deeds. On August 6, 1960, after negotiation through a real estate broker in Brighton, Michigan, defendants Oscar A. Carlson and Genevieve S. Carlson purchased the property situated in Livingston County by warranty deed. The defendants Carlson paid $15,250.00 for the property.[2] The purchase was consummated after an abstract of title was prepared by the Livingston County abstract office, Howell, Michigan, disclosing no notices of tax lien affecting real property owned by Donnelly. The abstract was examined for defendants Carlson by a law firm who passed upon the marketability of defendants' title in the property, in accordance with a written opinion dated July 22, 1960.

On March 20, 1961, the Internal Revenue Service filed a notice of tax liens with the Register of Deeds of Livingston County, in accordance with Act 107 of Public Acts of 1956, and on April 17, 1961 a second statutory waiver extending the time for payment to December 31, 1966 was signed by Donnelly.

Donnelly died intestate on January 13, 1963 and a petition for appointment of administrator was filed by plaintiff with the Wayne County Probate Court (No. 564–956) on December 30, 1966.[3]

Suit to foreclose the tax lien was commenced by the filing of a complaint with this court on December 30, 1966, with service being made upon the defendants Carlson on May 4, 1967.

The defendants Carlson moved for summary judgment in their favor, urging upon the court the failure of the government to comply with the Michigan statute regarding notice of tax liens, thus entitling them to the protection afforded bona fide purchasers in good faith without notice.

The position of the government is that notice was given constructively to the defendants by the Internal Revenue Service and such right to foreclose may not be lost through laches.

---

1. The "Uniform Federal Tax Lien Registration Act" [Act 107, P.A.1956 effective August 11, 1956; C.L.1948, § 211.661 et seq.] repealed the Act 104 of Public Acts of 1923. The Act eliminated the requirement of a description of property and was in effect for almost six years prior to the purchase by defendants Carlson. It was not until after the purchase by defendants that notice of any lien was filed with the Register of Deeds for Livingston County pursuant to Act 107.

2. Since the purchase by Carlson and prior to the commencement of suit, the defendants have expended over $25,000 on improvements to the property.

3. The Probate Code provides that "if the widow, husband, next of kin or grantee shall neglect for 30 days after the death of the intestate to apply for administration, or to request that administration be granted to some other person, 1 or more of the principal creditors may file such petition, or the same may be filed by any person in whose favor a right or cause of action exists which cannot be enforced without such administration or by the public administrator of the proper county." C.L.1948, § 702.51.

## OPINION

Rule 56 of Federal Rules of Civil Procedure provides for this court to grant a summary judgment where there is no issue as to any material fact and the moving party is entitled to judgment as a matter of law.

■ The controlling issue is whether a tax lien of the United States is valid as against a subsequent purchaser of real estate, who takes title without actual knowledge of an existing lien and where the notice of the lien is filed only with the Clerk of this court and not with the Register of Deeds in the county where the property is located.

Under the provisions of Section 3672 of the Internal Revenue Code of 1939, it is provided that such liens shall not be valid as against any purchaser until notice thereof has been filed in accordance with the law of the state in which the property subject to the lien is situated, whenever the state has by law provided for the filing of such notice.[4]

By Act 104 of the Public Acts of the State of Michigan for the year 1923 (C.L.1948, § 211.521 et seq.), the State of Michigan provided for the filing of notices of federal tax liens in the office of the Register of Deeds, pursuant to Section 3672 of the Internal Revenue Code of 1939, and thereby provided that the notice of lien should set forth, among other things, a description of the land upon which a lien is claimed.

■ The purpose of filing notice is to avoid the harsh effect of enforcing a secret tax lien upon innocent purchasers. United States v. Gilbert Associates, Inc., 345 U.S. 361, 73 S.Ct. 701, 97 L.Ed. 1071 (1953); United States v. Hodes, 355 F.2d 746 (1966), cert. granted 384 U.S. 968, 86 S.Ct. 1858, 16 L.Ed.2d 680. That the defendants were bona fide purchasers who acted in good faith and for value is not disputed. Whether they had notice or should have had notice is disputed.

The government asks this court to adhere to their reasoning that they complied with the notice provisions as set forth in § 3672 by the filing with the Clerk of this court. They contend that since United States v. Union Central Life Ins. Co., 368 U.S. 291, 82 S.Ct. 349, 7 L.Ed.2d 294 (1961), such state law had never existed and, therefore, they complied with § 3672 of the Code. Their position, apparently sound on its face, is faulty for two reasons.

First, the *Union Central* facts are clearly distinguished from this case in that an attempt had been made in the *Union Central* case to file notice with the Register of Deeds in 1954, which had been refused by the Register of Deeds pursuant to a Michigan Attorney General opinion rendered in 1953, which ruled that federal tax lien notices not containing a description of the property are not entitled to be recorded. In the instant case, there had been no attempt to file with the Register of Deeds. There is no indication that the Register would refuse in 1950, in light of the fact that the Register of Deeds for Wayne County accepted notice and

4. "§ 3672. Validity against mortgagees, pledgees, purchasers, and judgment creditors

(a) Invalidity of lien without notice. Such lien shall not be valid as against any mortgagee, pledgee, purchaser, or judgment creditor until notice thereof has been filed by the collector—

(1) Under State or Territorial laws. In the office in which the filing of such notice is authorized by the law of the State or Territory in which the property subject to the lien is situated, whenever the State or Territory has by law authorized the filing of such notice in an office within the State or Territory; or

(2) With clerk of district court. In the office of the clerk of the United States district court for the judicial district in which the property subject to the lien is situated, whenever the State or Territory has not by law authorized the filing of such notice in an office within the State or Territory; or

(3) With clerk of District Court of the United States for the District of Columbia. In the office of the clerk of the District Court of the United States for the District of Columbia, if the property subject to the lien is situated in the District of Columbia."

the opinion of the Attorney General for Michigan was not rendered until three years later.

■ Second, this court views the acts of the parties in relation to the laws in existence at that time. Thus, we have a Michigan statute requiring notice of any federal tax lien to be filed, with a description of the property, in the county where the property is located. This same statute was later declared not to be the law by the Supreme Court of the United States. However, even where a statute is unconstitutional and hence declared void as of the beginning, the Supreme Court has held that its existence before it has been so declared is not to be ignored. NLRB v. Rockaway News Supply Co., 345 U.S. 71, 73 S.Ct. 519, 97 L.Ed. 832 (1953). This court thinks that the principal stated by Chief Justice Hughes for a unanimous court in Chicot County Drainage District v. Baxter State Bank, 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329 (1939), is applicable to this case.

"The courts below have proceeded on the theory that the Act of Congress, having been found to be unconstitutional, was not a law; that it was inoperative, conferring no rights and imposing no duties, and hence affording no basis for the challenged decree. Norton v. Shelby County, 118 U.S. 425, 442, [6 S.Ct. 1121, 1125, 30 L.Ed. 178]; Chicago, I. & L. Ry. Co. v. Hackett, 228 U.S. 559, 566 [33 S.Ct. 581, 584, 57 L.Ed. 966]. It is quite clear, however, that such broad statements as to the effect of a determination of unconstitutionality must be taken with qualifications. The actual existence of a statute, prior to such a determination, is an operative fact and may have consequences which cannot justly be ignored. The past cannot always be erased by a new judicial declaration. The effect of the subsequent ruling as to invalidity may have to be considered in various aspects,—with respect to particular re-

lations, individual and corporate, and particular conduct, private and official. Questions of rights claimed to have become vested, of status, of prior determinations deemed to have finality and acted upon accordingly, of public policy in the light of the nature both of the statute and of its previous application, demand examination." (308 U.S. 374, 60 S.Ct. 318)

An examination of the facts will disclose that the Michigan statute had been approved by this court and the Court of Appeals. See United States v. Maniaci, 36 F.Supp. 293 (1933) and Youngblood v. United States, 141 F.2d 912 (6 Cir., 1944.) And yet in 1950, when notice, with a description, was to be filed in Livingston County, the government failed to comply. Reasons for not filing the notice were not given, except to say that in the *Union Central* case the Supreme Court held that no such state law could exist. That decision, however, had not been rendered until 1961, some 16 months after the purchase by the defendants. Prior to that decision, there was no indication that such statute would be declared per se illegal. On the contrary, every indication was that the statute would be upheld.

Thus, in the light of the foregoing facts and reasons, this Court cannot but hold that the Carlsons were bona fide purchasers in good faith without notice.

■ This Court does agree with the government on the question of laches, that such right may not be lost through laches. United States v. Mr. Hamburg Bronx Corp., 228 F.Supp. 115 (1964); United States v. Summerlin, 310 U.S. 414, 60 S.Ct. 1019, 84 L.Ed. 1283 (1940). And the United States may proceed to recover back taxes from the Estate of Donnelly.

Therefore, it is ordered summary judgment in favor of the defendants Carlson should be and hereby is granted. Plaintiff, United States, has no interest, lien, or claim in the property described in the complaint.