# UNITED STATES *v.* ESTATE OF DONNELLY ET AL.

No. 104.   Argued January 12, 1970—
Decided March 23, 1970

*Matthew J. Zinn* argued the cause for the United States. On the brief were *Solicitor General Griswold, Assistant Attorney General Walters, Joseph J. Connolly,* and *Crombie J. D. Garrett.*

*Daniel N. Pevos* argued the cause and filed a brief for respondents.

MR. JUSTICE MARSHALL delivered the opinion of the Court.

In 1950, a tax liability of approximately $26,000 was assessed against the taxpayer Donnelly, a resident of Michigan. Upon assessment, a statutory lien was created in favor of the United States "upon all property and rights to property, whether real or personal" belonging to the taxpayer. Internal Revenue Code of 1939, § 3670. Under § 3672 of the 1939 Code, such a lien could become effective against subsequent purchasers of Donnelly's property in either of two ways: (1) by filing notice of the lien in the state office in which filing of such notice was authorized by state law; or (2) if filing in a state office was not authorized by state law, by filing notice of the lien in the United States District Court for the district in which the property was located.[1]

---

[1] The Internal Revenue Code of 1939 provided:

"Sec. 3670. Property Subject to Lien.

"If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, penalty, additional amount, or addition to such tax, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real

A Michigan statute purported to authorize the filing of federal tax lien notices with the county register of deeds. However, the Michigan statute expressly required that notices of federal tax liens upon real property contain "a description of the land upon which a lien is claimed." [2] The standard tax lien notice form used by

or personal, belonging to such person." 26 U. S. C. § 3670 (1940 ed.).

"Sec. 3672. Validity Against Mortgagees, Pledgees, Purchasers, and Judgment Creditors.

"(a) *Invalidity of Lien Without Notice.*—Such lien shall not be valid as against any mortgagee, pledgee, purchaser, or judgment creditor until notice thereof has been filed by the collector—

"(1) *Under State or Territorial laws.*—In the office in which the filing of such notice is authorized by the law of the State or Territory in which the property subject to the lien is situated, whenever the State or Territory has by law authorized the filing of such notice in an office within the State or Territory; or

"(2) *With Clerk of District Court.*—In the office of the clerk of the United States district court for the judicial district in which the property subject to the lien is situated, whenever the State or Territory has not by law authorized the filing of such notice in an office within the State or Territory . . . ." 26 U. S. C. § 3672 (1946 ed.).

[2] Michigan Public Acts, 1923, No. 104, as amended by Michigan Public Acts, 1925, No. 13, repealed by Michigan Public Acts, 1956, No. 107, provided in pertinent part:

"Sec. 1. That whenever the collector of internal revenue for any district in the United States, or any tax collecting officers of the United States having charge of the collection of any tax payable to the United States, shall desire to acquire a lien in favor of the United States for any tax payable to the United States against any property real or personal, within the state of Michigan pursuant to section three thousand one hundred eighty-six of the revised statutes of the United States, he is hereby authorized to file a notice of lien, setting forth the name and the residence or business address of such taxpayer, the nature and the amount of such assessment, and a description of the land upon which a lien is claimed, in the office of the register of deeds in and for the county or counties in Michigan in which such property subject to such lien is situated; and such register of deeds shall, upon receiving a filing fee of fifty cents for such notice, file and index the same . . . ."

the Treasury Department made no provision for such a description, but was rather a blanket notice covering all property of the taxpayer in the county. The Department had taken the position that § 3672 permitted state law to dictate the place for filing the notice of lien, but not the form or content of the notice. Accordingly, the Department, believing that state law did not "authorize" filing of the standard federal notice with the register of deeds, filed its notice of lien on Donnelly's property in the United States District Court for the Eastern District of Michigan. The Eastern District includes the land involved in the case, which was held by Donnelly and his wife as tenants by the entirety. The question is whether the filing in federal court gave the United States priority against a subsequent good-faith purchaser of Donnelly's land.

The Department did not collect in full on Donnelly's tax liability nor did it foreclose its lien on any of his property. Rather, between 1950 and his death in 1963, it obtained waivers from him of the statute of limitations on the assessed liability, the last of which extended the time for collection to December 31, 1966. In the meantime, Donnelly's wife died and he became fee owner of the Livingston County land. Shortly thereafter, in August 1960, he sold the land to respondents Mr. and Mrs. Carlson, who are the real parties in interest in this case. An abstract of title, prepared for the Carlsons by the Livingston County abstract office, disclosed no tax liens affecting real property owned by Donnelly; the same abstract, however, disclaimed any examination of court records, state or federal. The United States concedes that the Carlsons had no actual notice of the lien on Donnelly's land.

After the Carlsons purchased the land, this Court decided in *United States* v. *Union Central Life Ins. Co.,* 368 U. S. 291 (1961), that the Department had been right in maintaining that it did not have to conform its

lien notices to the Michigan requirement that such notices must contain a description of the land upon which the lien is claimed. Thus, this Court held, the state law did not "authorize" state filing of federal lien notices, and the filing of a notice in the appropriate federal district court was sufficient to give the lien priority against subsequent purchasers.

In 1966, just before the last statutory waiver executed by Donnelly expired, the United States brought suit in federal court to foreclose its tax lien on the Livingston County property, now owned by the Carlsons. The District Court held that *Union Central, supra,* was distinguishable, and in any event should not be applied retroactively against a person making a good-faith purchase before its date of decision, and granted summary judgment for the Carlsons. 295 F. Supp. 557 (D. C. E. D. Mich. 1967). The Court of Appeals affirmed on the basis of the opinion of the District Court. 406 F. 2d 1065 (C. A. 6th Cir. 1969). We granted certiorari, 396 U. S. 814 (1969), to consider the apparent conflict with our decision in *Union Central, supra,* and we reverse.

The District Court distinguished *Union Central* on the ground that "an attempt had been made in [that case] to file notice with the Register of Deeds in 1954, which had been refused by the Register of Deeds pursuant to a Michigan Attorney General opinion rendered in 1953, which ruled that federal tax lien notices not containing a description of the property are not entitled to be recorded. In the instant case, there had been no attempt to file with the Register of Deeds." 295 F. Supp., at 559.

The attempted distinction is unsatisfactory for two reasons. First, nothing in this Court's opinion in *Union Central* or in the record of that case indicates that any attempt was made to file the notice of lien with the register of deeds. Second, whether or not such an attempt was made, state law barred the local office from

accepting the federal lien notice, which lacked the description of the land explicitly required by the state statute. The presence or absence of the legally futile act of tendering the noncomplying lien notice to the register of deeds could not be a factor determinative of the priority to be granted the federal lien.[3]

Further, the District Court held that when the Carlsons purchased Donnelly's land in 1960, they were entitled to rely on the law as it appeared at that time. As the court saw it, the prevailing interpretation of the federal statute in Michigan, stated in *Youngblood* v. *United States*, 141 F. 2d 912 (C. A. 6th Cir. 1944), required the Treasury Department to file a complying notice of lien with the register of deeds in order to gain priority against subsequent purchasers. Conceding that this Court rejected the *Youngblood* interpretation in its *Union Central* decision in 1961, the District Court nevertheless concluded that *Union Central* should not be applied retroactively to give the 1950 federal lien priority over the Carlsons' 1960 good-faith purchase of the same land, and thus to upset the Carlsons' allegedly justifiable expectation of unclouded title.

In its retroactivity determination, the District Court relied largely on this Court's decision in *Chicot County Drainage District* v. *Baxter State Bank,* 308 U. S. 371 (1940). The petitioner in that case had taken advantage of a federal statute that permitted readjustment of municipal debt, amounting to a reduction of that debt, upon a finding by a district court that the readjustment plan was fair and equitable and upon approval of the

---

[3] Nor is it significant that the lien notice here was filed in 1950, before the Michigan Attorney General's opinion referred to by the District Court (opinion of the Attorney General of Michigan, No. 1709, September 10, 1953), whereas the filing in *Union Central* came in 1954, after that opinion was rendered. The Attorney General's opinion merely declared what was already the law of Michigan.

plan by holders of two-thirds of the outstanding indebtedness. The respondents, holders of bonds issued by the petitioner, had been parties to that action, had raised no constitutional challenge to the statute, and had not appealed the final decree of the District Court approving the plan. Subsequently, in an unrelated proceeding, the statute was declared unconstitutional. *Ashton* v. *Cameron County District,* 298 U. S. 513 (1936). The respondents then brought suit on the original bonds, which had been canceled by the original decree, claiming that a decree obtained under an unconstitutional statute could not support a plea of *res judicata.* This Court held that *res judicata* barred the new action, stressing the fact that the respondents had not raised the constitutional claim in the original action. The Court noted generally that the actual existence of a statute, prior to determination of its unconstitutionality

> "is an operative fact and may have consequences which cannot justly be ignored. The past cannot always be erased by a new judicial declaration. . . . Questions of rights claimed to have become vested, of status, of prior determinations deemed to have finality and acted upon accordingly, of public policy in the light of the nature both of the statute and of its previous application, demand examination." 308 U. S., at 374.

The District Court here found that this Court's decision in *Union Central* amounted to an invalidation of the Michigan statute providing for local filing of federal tax lien notices, and that the Carlsons had justifiably relied upon the state statute, prior to its invalidation, in purchasing Donnelly's property without first searching the records of the federal court. Quoting the above language from *Chicot County* the court held that the Carlsons' reliance on the subsequently invalidated statute

was sufficient to give them priority over the earlier filed tax lien.

In our view, *Chicot County* does not support failure to apply *Union Central* here. In the first place, the *Union Central* decision did not invalidate any statute, state or federal. It merely construed § 3672, in accordance with the clear language of the statute, to authorize the filing of tax lien notices in federal court where the state law failed to provide for local filing. It determined, as the courts and other authorities who had considered the question had all agreed, that Michigan law did not authorize the filing of the standard federal lien notice, which lacked the description of the land required by the Michigan filing statute. Finally it held, in accordance with the will of Congress as expressed in the 1942 amendment to § 3672 and the accompanying legislative history, that state law imposing more onerous requirements of content on lien notices than federal law did not "authorize" state filing within the meaning of the federal statute.

Thus, the Carlsons did not rely on any statute subsequently declared unconstitutional by this Court. The most that can be said is that they may have failed to search for notices of tax lien in the federal court on the basis of a construction of § 3672 given by the Court of Appeals for the Sixth Circuit in *Youngblood* v. *United States, supra.* However, the *Youngblood* construction, which the Government never accepted and which it could not seek to have reviewed in this Court because the judgment in that case rested on independent grounds,[4] cannot be sufficient to deprive the Government

---

[4] In *Youngblood,* the United States sought an order in the nature of a writ of mandamus to compel a county register of deeds in Michigan to accept and file a standard federal lien notice, which lacked the description of the encumbered land required by the state statute. The Court of Appeals held that the order should not issue,

of the fruits of following what under the statute was the proper filing procedure.

Further, in *Chicot County* the petitioner did not merely rely on a federal statute later declared unconstitutional, but on a final judgment rendered in his favor in a proceeding in which the respondent did not even raise the constitutional issue. The analogous situation would be presented here only if the Carlsons had, before the decision in *Union Central*, obtained a decree of quiet title to their property in a proceeding to which the United States was a party and in which the United States had not raised the issue of the priority of its lien under § 3672. In short, this case lacks the element of *res judicata*—reliance by a party on a final judgment rendered in his favor—which was the decisive factor in *Chicot County*.

Acts of Congress are generally to be applied uniformly throughout the country from the date of their effectiveness onward. Generally the United States, like other parties, is entitled to adhere to what it believes to be the correct interpretation of a statute, and to reap the benefits of that adherence if it proves to be correct, except where bound to the contrary by a final judgment

---

first, because United States district courts lack jurisdiction to issue original writs of mandamus or orders in the nature of mandamus; and second, because the law of Michigan clearly provided in terms that in order to be filed with the register of deeds, a federal tax lien notice had to contain a description of the land. The court went on, in apparent dictum, to confirm its earlier holding in *United States* v. *Maniaci*, 116 F. 2d 935 (1940), aff'g 36 F. Supp. 293 (D. C. W. D. Mich. 1939), that § 3672 required the United States to file in the local office lien notices conforming to the state law requirements as to content. In delivering this apparent dictum, the Court of Appeals ignored the clear legislative history, summarized in this Court's *Union Central* decision, 368 U. S., at 295–296, which showed that in enacting the 1942 amendment to § 3672, Congress had meant to disapprove the *Maniaci* holding.

in a particular case. Deviant rulings by circuit courts of appeals, particularly in apparent dictum, cannot generally provide the "justified reliance" necessary to warrant withholding retroactive application of a decision construing a statute as Congress intended it. In rare cases, decisions construing federal statutes might be denied full retroactive effect, as for instance where this Court overrules its own construction of a statute, cf. *Simpson* v. *Union Oil Co.,* 377 U. S. 13, 25 (1964), but this is not such a case.

The judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings [5] not inconsistent with this opinion.

*It is so ordered.*

Mr. Justice Harlan, concurring.

I fully agree that the Government is entitled to prevail in this case, but I would rest that conclusion on a broader ground than the Court's opinion might be taken to evince. More especially, I fear that certain distinctions suggested by the Court's opinion—*e. g.,* between clear and ambiguous statutes, decisions construing statutes for the first time, decisions overruling prior constructions of statutes—may point in the direction of a retroactivity quagmire in civil litigation not unlike that in which the Court has become ensnared in the criminal field. See my dissenting opinion in *Desist* v. *United States,* 394 U. S. 244, 256 (1969).

The impulse to make a new decisional rule nonretroactive rests, in civil cases at least, upon the same considerations that lie at the core of *stare decisis,* namely to avoid jolting the expectations of parties to a transaction. Yet

---

[5] The Carlsons have raised additional defenses to the foreclosure suit brought by the United States, but as these defenses were not considered by the District Court or the Court of Appeals, we do not rule on them here.

once the decision to abandon precedent is made, I see no justification for applying principles determined to be wrong, be they constitutional or otherwise, to litigants who are in or may still come to court. The critical factor in determining when a new decisional rule should be applied to a transaction consummated prior to the decision's announcement is, in my view, the point at which the transaction has acquired such a degree of finality that the rights of the parties should be considered frozen. Just as in the criminal field the crucial moment is, for most cases, the time when a conviction has become final, see my *Desist* dissent, *supra,* so in the civil area that moment should be when the transaction is beyond challenge either because the statute of limitations has run or the rights of the parties have been fixed by litigation and have become *res judicata.* Any uncertainty engendered by this approach should, I think, be deemed part of the risks of life.

These considerations, I believe, underlie the Court's holdings in *Chicot County Drainage District* v. *Baxter State Bank,* 308 U. S. 371 (1940), where the Court refused to upset a *judgment* based on a subsequent change in the law, and *Cipriano* v. *City of Houma,* 395 U. S. 701 (1969), where we held that municipal bonds, authorized by invalid referenda, would not be subject to challenge "where, under state law, the time for challenging the election result has . . . expired." 395 U. S., at 706.

To the extent that equitable considerations, for example, "reliance," are relevant, I would take this into account in the determination of what relief is appropriate in any given case. There are, of course, circumstances when a change in the law will jeopardize an edifice which was reasonably constructed on the foundation of prevailing legal doctrine. Thus, it may be that the law of remedies would permit rescission, for example, but not an award of damages to a party who finds him-

self able to avoid a once-valid contract under new notions of public policy. Cf. *Simpson* v. *Union Oil Co.*, 377 U. S. 13, 25 (1964). Another instance, though apt to arise infrequently in federal court, would be where certain real property transactions fail to anticipate changes in principles governing land usage, for example, the enforceability of certain kinds of easements or covenants. In such instances it may be appropriate to withhold an equitable remedy and confine an award of damages to a limited period, or the like.* The essential point is that while there is flexibility in the law of remedies, this does not affect the underlying substantive principle that short of a bar of *res judicata* or statute of limitations, courts should apply the prevailing decisional rule to the cases before them.

On these premises I join the Court's opinion.

MR. JUSTICE DOUGLAS, with whom MR. JUSTICE BRENNAN and MR. JUSTICE STEWART concur, dissenting.

Respondents are bona fide purchasers of real property located in Livingston County, Michigan. Their purchase was made in August 1960 from one Donnelly, against whom the United States had acquired a tax lien in 1950. By § 3672 of the Internal Revenue Code of 1939 that lien is not valid against a purchaser until notice thereof is filed in the office "authorized" by state law. Where state law "authorized" no such office, notice of lien was to be filed in the office of the United States District Court for the judicial district in which the land is located. *Ibid.* Michigan law authorized notice of a federal tax lien containing "a description of the land"

---

*I would not, of course, hold this view of retroactivity binding on state courts and a federal court would, in fact, be obligated to abide by the applicable state rule should a retroactivity question arise in a diversity case.

to be filed with the register of deeds in the county where the land was located.[1]

The United States refused to be bound by the requirement of Michigan law regarding a "description of the land" and filed notice of lien in the District Court.

Hence a title search in the accustomed way revealed no notice of lien clouding Donnelly's title. Hence respondents purchased the land innocently and in good faith. Thereafter, on March 20, 1961, the United States filed its notice of lien with the register of deeds of Livingston County, as required by Michigan law.[2]

On December 18, 1961, over a year after respondents' purchase, this Court held in *United States* v. *Union Central Life Ins. Co.*, 368 U. S. 291, that "Michigan law authorizing filing only if a description of the property was given" ran counter to the intent of § 3672, and consequently no real property filing requirement could be considered "authorized" by Michigan law. *Id.*, at 296. Therefore, the Court held, a notice of lien was properly filed in the District Court.

I dissent from a retroactive application of that holding so as to injure bona fide purchasers who had relied on the prior law to make their investments. The Michigan Act had at the time of the purchase been approved both by the District Court in *United States* v. *Maniaci*, 36 F. Supp. 293, and by the Court of Appeals for the Sixth Circuit in *Youngblood* v. *United States*, 141 F. 2d 912.

It seems manifestly unjust to deprive respondents of their property for the benefit of a lawless tax collector

---

[1] Michigan Public Acts, 1923, No. 104, as amended, Michigan Public Acts, 1925, No. 13.

[2] Previously, on November 28, 1950, the United States had filed notice of its lien with the register of deeds of Wayne County.

who knowingly concealed his secret lien until after the purchase was made.[3]

It is true that later, in *Union Central,* we ruled that § 3672 did not require the Government to file pursuant to Michigan law. Yet this new ruling on federal preemption should not, in my view, be applied to undo everything done by those relying on the former construction, as upheld in *Youngblood.*

I would hold that the teaching of *Chicot County Drainage District* v. *Baxter State Bank,* 308 U. S. 371, 374, as to statutes ruled unconstitutional, should be applied to the present situation:

> "The actual existence of a statute, prior to such a determination, is an operative fact and may have consequences which cannot justly be ignored. The past cannot always be erased by a new judicial declaration. The effect of the subsequent ruling as to invalidity may have to be considered in various aspects,—with respect to particular relations, individual and corporate, and particular conduct, private and official. Questions of rights claimed to have become vested, of status, of prior determinations deemed to have finality and acted upon accordingly, of public policy in the light of the nature both of the statute and of its previous application, demand examination."

---

[3] The Michigan statute requiring notices of liens to contain a description of real property upon which a lien was claimed was repealed in April 1956 by Act No. 107, Michigan Public Acts, 1956. The United States, however, did not thereafter promptly file its notice of lien in the state office as it was now authorized to do under Michigan law. Nor did it stand on its previous filing in the District Court. Instead, it waited until March 20, 1961, on which date it filed a notice of the lien with the register of deeds of Livingston County.

The majority of the Court in the present case narrowly confines that statement to the particular facts involved in *Chicot County.* The principle there involved, however, rooted deeply in considerations of fairness, clearly applies to the present case. I would hold that bona fide purchasers, whose purchases antedate our *Union Central* decision and who relied on the law as it had been previously construed, are protected in their investments. I dissent from the Court's holding to the contrary.