In re SEWANEE LAND, COAL AND CATTLE, INC., L & R Coal Company, Inc., Debtors.

OFFICE OF SURFACE MINING, UNITED STATES DEPARTMENT OF INTERIOR, Appellant,

v.

SEWANEE LAND, COAL & CATTLE, INC., L & R Coal Company, Inc., Appellees.

Civ. A. No. 83–G–0910–E.
Bankruptcy No. 82–1526.

United States District Court,
N.D. Alabama, E.D.

Aug. 4, 1983.

Frank W. Donaldson, U.S. Atty., N.D. Ala., Leon Kelly, Asst. U.S. Atty., Birmingham, Ala., Courtney Shea, U.S. Dept. of Interior, Knoxville, Tenn., Jack Rivers, U.S. Trustee, Birmingham, Ala., for appellant.

Thomas J. Knight, Anniston, Ala., for Sewanee.

Harry P. Long, Williams, Williams & Norton, Anniston, Ala., for L & R Coal.

## MEMORANDUM OPINION

GUIN, District Judge.

This case comes before the district court on appeal by the defendant, Office of Surface Mining, United States Department of Interior ("OSM"), from the United States Bankruptcy Court, Northern District of Alabama. The bankruptcy court granted an injunction sought by the plaintiffs, Sewanee Land, Coal and Cattle, Inc. ("Sewanee"), and L & R Coal Company, Inc. ("L & R"), to prevent the defendant OSM from closing the mining operation of L & R for its failure to obtain a permit. The case was commenced by a voluntary petition filed on January 28, 1982, in the bankruptcy court under Chapter 11, Title 11, United States Code, by Sewanee as debtor in possession of a tract of land in the state of Georgia. L & R Coal Company is a contract miner of Sewanee, and the bankruptcy court granted the injunction because of the claim by the plaintiffs that the threatened closure of L & R's mining operation by OSM for failure to obtain a permit violated the automatic stay provisions of 11 U.S.C. § 362(a).

The issue before this court is whether or not the bankruptcy court has jurisdiction to enjoin the OSM from taking any action against a third-party nonbankrupt, who is mining beyond the statutory deadline without a valid permit. The finding of this court is that the bankruptcy court exceeded its jurisdiction for the reasons stated in the opinion herein, and the judgment for the plaintiffs Sewanee and L & R is due to be reversed.

This court finds that the bankruptcy court did not have jurisdiction to enjoin the Secretary from taking enforcement action against L & R for mining without a permit and, alternatively, that the bankruptcy judge abused his discretion in so enjoining the United States Department of Interior. The injunction in favor of the plaintiffs is therefore reversed.

## I. STATEMENT OF FACTS

A. *Statutory Background of The Surface Mining Control and Reclamation Act of 1977, 30 U.S.C. § 1201 et seq.*

The Secretary of the Interior ("the Secretary"), acting through the OSM, is charged with primary responsibility for administering and implementing the Act by promulgating regulations and enforcing its provisions. 30 U.S.C. § 1211(c). The purpose of "the Act" is to "establish a nationwide program to protect society and the environment from the adverse effects of surface coal mining operations." 30 U.S.C. § 1202(a).

The state of Georgia did not adopt an approved program incorporating the required regulations established by the Secretary for permanent regulatory programs. *See* 30 U.S.C. § 1251(b) and 44 Fed.Reg. 14902 (1979). Therefore, the Secretary implemented a federal program for the state pursuant to 30 U.S.C. § 1251. The federal permanent program for Georgia was to become effective on April 9, 1982.

The requirements and procedure for a company to follow in obtaining a permit are clearly and correctly set out in the defendant-appellant's brief. The permanent program permit requirements become effective eight months after the effective date of the permanent program for a state. 30 U.S.C. § 1256; 30 C.F.R. § 771.11. After that date, a company must have an approved permanent program permit to operate. However, if a company operating under a previously-issued state permit submitted a complete permit application to the regulatory authority (in Georgia, the regulatory authority is OSM) within two months of the effective date of the permanent program, and the regulatory authority doesn't act on the permit application before the eight month deadline, then the company may continue operating until its permit is either granted or denied. 30 U.S.C. §§ 1252(d), 1256(a); 30 C.F.R. § 771.13(b). To continue a mining operation beyond the eight month deadline, a company would have to (a) have a state permit; (b) have filed a complete application for a permanent program permit before the two month deadline, which is not yet acted on; and (c) conduct its operation under the terms of its permit and the requirements of the interim program. 30 C.F.R. §§ 771.13(b), 771.21. In Georgia, all mining operations were required to have approved permanent program permits by December 9, 1982, with the exception of those mining companies operating under a state permit prior to April 9, 1982, who filed a complete permanent program permit application by June 9, 1982.

### B. *L & R Mining Company, Inc.*

L & R began mining in September, 1981, under the only state permit which it was required to have, a National Pollutant Discharge Elimination System permit. In March of 1983, OSM attempted to contact individual operators to inform them of the requirements of the federal permanent program. L & R, however, had ceased mining on or about January, 1983.

L & R did not submit a permit application prior to June 9, 1982. In August of 1982,

Terry Lamb, the owner of L & R, was informed by an OSM supervisor, Robert Ostoff, that L & R could only mine at the L & R site until December 9, 1982, without an approved state permit. In September 1982, L & R began to mine again, and on December 9, 1982, it filed an application for a permanent program permit. The consultant who prepared the permit application was not of the opinion that the area covered by the application had previously been mined.

The bankruptcy court enjoined OSM from terminating the mining operations of L & R because of its failure to file a timely application, until such time as a final determination is made on the application filed by L & R for a permanent permit to mine.

## II. ISSUES ON APPEAL

### A. *Jurisdiction of the Bankruptcy Court.*

The jurisdiction of the bankruptcy court is limited by the delineation of that power from Congress. *In re Grand Spaulding Dodge, Inc.,* 5 B.R. 481 (D.C.N.D.Ill.1980). In the instant case, the jurisdiction of the bankruptcy court is based on Section 1471 of the Judicial Code which provides:

Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or related to cases under title 11. The bankruptcy court for the district in which a case under title 11 is commenced shall exercise all of the jurisdiction conferred by this section on the district courts.

28 U.S.C. § 1471.

This broad grant of jurisdiction to the bankruptcy courts was held by the Supreme Court to be an unconstitutional vesting of the essential attributes of judicial power in a court which is legislatively created. *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). The Supreme Court stayed its judgment until December

24, 1982, *Northern Pipeline,* —— U.S. ——, 103 S.Ct. 199, 74 L.Ed.2d 160 (1982). The purpose of the limited stay was to "afford Congress an opportunity to reconstitute the bankruptcy courts or to adopt other valid means of adjudication without impairing the interim administration of the bankruptcy laws." 458 U.S. 50, 89, 102 S.Ct. 2858, 2881, 73 L.Ed.2d 598, 627 (1982).

Appellees, while conceding that this section was found unconstitutional, maintain that, nevertheless, the bankruptcy court had jurisdiction because the stay of *Marathon* was in effect at all relevant times to the instant case.

Appellant claims that it is the expansion of jurisdiction which was found to be unconstitutional in *Marathon,* and the exercise of jurisdiction in the instant case falls within that expansion of jurisdiction granted by the Bankruptcy Reform Act.

Appellant, while acknowledging the effectiveness of the stay of judgment in *Marathon,* states that "the bankruptcy courts should be circumspect in exercising powers found to be unconstitutional." One of the issues that must be decided on appeal is whether jurisdiction hinges on the effective date of the Supreme Court decision in *Marathon.*

Even though the decision in *Marathon* is effective at the time of this appeal, the district court must use the old law. This decision in *Marathon* was only to apply prospectively, and not retroactively. 458 U.S. at 88, 102 S.Ct. at 2880, 73 L.Ed.2d at 626. This finding in *Marathon* was not one of purely prospective application, however, because the new rule of the unconstitutionality of § 1471 was applied in *Marathon.* Of the threefold requirements bearing on the issue of retroactivity, (1) issue of first impression, (2) whether or not retroactivity would further the operation of the Supreme Court's holding, and (3) whether retroactivity would produce substantial hardship and inequitable results in individual cases, the Court found that it would be inequitable and substantially unfair to "those litigants who relied upon the Act's vesting of jurisdiction in the bankruptcy courts." 458 U.S.

at 88, 102 S.Ct. at 2880, 73 L.Ed.2d at 626. This instant case was filed on January 28, 1982, in a voluntary petition for bankruptcy. The complaint to enjoin OSM was filed on December 14, 1982, a temporary restraining order was granted on December 14, 1982, and a hearing on the merits was held and the injunction handed down on December 16, 1982. The decision in *Marathon* was handed down on June 28, 1982. This is not a case wherein the litigants would be visited with "substantial injustice and hardship" because of their reliance upon this broad grant of jurisdiction to the bankruptcy court. Indeed, the Supreme Court has often emphasized that a good-faith reliance on an old rule is a significant factor in determining the retroactivity of a new rule. *See, e.g., Gelpcke v. Dubuque,* 68 U.S. 175, 17 L.Ed. 520 (1864); *Hanover Shoe, Inc. v. United Shoe Machinery Corp.,* 392 U.S. 481, 88 S.Ct. 2224, 20 L.Ed.2d 1231 (1968); *United States v. Estate of Donnelly,* 397 U.S. 286, 90 S.Ct. 1033, 25 L.Ed.2d 312 (1970). Nevertheless, this is not a case wherein the Supreme Court is deciding whether or not the new rule in *Marathon* is to be retroactive or not. This is a case where litigation was begun after the announcement of the new rule but prior to the expiration of the stay.

Since the expiration of the second stay in *Marathon* on December 24, 1982, the bankruptcy courts have been operating under an interim rule which provides for a continuation of the current system with significant involvement by the district court. The validity of the interim rule was upheld by the Fifth Circuit in *Braniff Airways v. Civil Aeronautics Board,* 700 F.2d 214 (5th Cir. 1983).

The bankruptcy court was operating under the old rule when it granted the injunction and appellee is correct in its statement that this adversary proceeding was commenced and the ruling entered before the stay in *Marathon* had expired. It is obvious to this court that this was not a good-faith reliance on the old law, but an attempt to benefit from the remaining ten days of the stay in *Marathon,* when the decision prohib-

iting the bankruptcy court from exercising just this type of jurisdiction had been decided some five months before this complaint was filed. In *In re Otero Mills, Inc.*, 25 B.R. 1018 (D.C.D.N.M.1982), the court considered the jurisdiction of the bankruptcy courts after the decision in *Marathon:*

> The district court must apply the decision of the Supreme Court, *Patterson v. Brown*, 393 F.2d 733 (10th Cir.1968). This court is without power to contravene the clear intent of the Supreme Court that bankruptcy courts continue to operate as before during the pendency of the stay.

25 B.R. at 1023.

This injunction was granted because plaintiffs-appellees claimed that the threatened closure by the OSM violated the automatic stay provisions of 11 U.S.C. § 362(a). Yet § 362(b)(4) exempts from the automatic stay provisions of subsection (a) actions by a governmental unit to enforce its police or regulatory powers. This intent by Congress to distinguish between court proceedings and regulatory actions was emphasized in *In re Brada Miller Freight Systems, Inc.*, 16 B.R. 1002, 1009 (D.C.N.D.Ala.1981). In *Brada Miller*, the court stated that Congressional intent was evident from failing to confer jurisdiction on the bankruptcy courts to hear and determine regulatory matters and also by exempting regulatory proceedings from the automatic stay provisions. This intent by Congress that the bankruptcy courts be precluded from usurping the role of the regulatory agencies is further evidenced by Section 1478 of the Judicial Code. That section provides in pertinent part:

> A party may remove any claim or cause of action in a civil action, other than ... a civil action by a Government unit to enforce such government unit's police or regulatory power, to the bankruptcy court for the district where such civil action is pending, if the bankruptcy courts have jurisdiction over such claim or cause of action.

L & R had readily available administrative relief if it felt aggrieved by any actions or order of the Secretary. L & R had the right to an administrative review of a cessation order, that would have been issued by the Secretary, had OSM not been enjoined. 30 C.F.R. § 910.843–16 and 43 C.F.R. Part 4. Also, pursuant to 30 U.S.C. § 1275(c), L & R could have requested temporary relief and have had a decision from the Secretary within five days. In *Shawnee Coal Co. v. Andrus*, 661 F.2d 1083 (6th Cir.1981), a case which dealt with the adequacy of and exhaustion of administrative remedies under the Act, the court said that to allow relief without requiring exhaustion of administrative procedures prevented the Secretary from performing the special functions of the regulatory office so as to moot controversies. *Id.* at 1092.

◼ In this case, the nonbankrupt, L & R, is benefiting from the protections of Chapter 11, which are designed for the bankrupt only. *Royal Truck & Trailer, Inc. v. Armadora Salvadorena, S.A.*, 10 B.R. 488, 490 (D.C.N.D.Ill.1981). In *Teledyne Industries, Inc. v. Eon Corp.*, 401 F.Supp. 729, 734 (S.D.N.Y.1975), the court found that something more than the mere fact that one of the parties to the lawsuit has filed a Chapter 11 bankruptcy petition must be shown in order that proceedings be stayed against nonbankrupt parties. In order for a bankruptcy judge to assume jurisdiction over a matter concerning a nonbankrupt individual, there must be a substantial relationship between the matter in controversy and the bankruptcy case. *In re Otero Mills, Inc., supra.* In *Otero Mills* the court held that the standard used by the bankruptcy court was appropriate because of the debtor's assertion that its reorganization plan would require contribution of assets by the third party to the bankrupt-debtor. Neither Sewanee nor L & R has introduced any evidence indicating that Sewanee, the party in bankruptcy, has any proprietary interest in L & R's right to mine. Appellee asserts as finding of fact by the bankruptcy court that the coal mining operation of L & R Coal Company on the tract of land owned by Sewanee is an essential part of Sewanee's plan of reorganization. Nevertheless,

the asset of Sewanee's estate is its coal reserve, which is not threatened by the action of the Secretary.

■ The bankruptcy court exceeded its limited jurisdiction. It should have abstained from exercising jurisdiction, as this was agency action not intended to be included within the jurisdictional grant of 28 U.S.C. § 1471.

B. *Abuse of Discretion by the Bankruptcy Court by Enjoining OSM.*

■ The Bankruptcy Reform Act of 1978, 11 U.S.C. § 105, gives the bankruptcy court authority to issue injunctions. Section 105(a) provides in pertinent part that "[t]he bankruptcy court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title . . . ." This grant of equitable power is not without limits and restrictions. *In re Brada Miller Freight Systems, Inc., supra; In the Matter of Johns-Manville Corp.,* 26 B.R. 405, 415 (Bkrtcy.S.D.N.Y. 1983). An abuse of discretion by the bankruptcy judge will be found when he fails to apply the proper legal standard for the issuance of an injunction or bases his decision on findings of fact that are clearly erroneous. *In re Brada Miller Freight Systems, Inc., supra,* at 1012. This bankruptcy court needed to make a finding that the regulatory proceedings of the OSM threatened the assets of Sewanee's estate prior to entering an injunction to stay those proceedings. *Brada Miller* at 1012. This "threat to the estate's asset test" was enunciated in *In re Bel Air Chateau,* 611 F.2d 1248 (9th Cir.1979), holding that under a threat to the estate's assets, the decision may be discretionary. Nevertheless, as no finding was made as to a threat to the estate's assets, it was a clear abuse of discretion to grant the injunction.

■ The Surface Mining Act sets forth the criteria to be met before an injunction may issue against enforcement actions by the Secretary, 30 U.S.C. § 1276. Section 526(c) of the Act, 30 U.S.C. § 1276(c), states that for a court to grant temporary relief from enforcement orders issued pursuant to the Act, it must find:

(1) all parties to the proceedings have been notified and given an opportunity to be heard on a request for temporary relief;

(2) the person requesting such relief shows that there is a substantial likelihood that he will prevail on the merits of the final determination of the proceeding; and

(3) such relief will not adversely affect the public health or safety or cause significant imminent environmental harm to land, air, or water resources.

Plaintiffs-appellees have failed to show a substantial likelihood of prevailing on the merits. L & R failed to obtain the proper permit to mine coal after December 9, 1982. L & R did not follow either of the two methods which would allow a mining operation to legally mine coal in Georgia after December 9, 1982. *See* 30 U.S.C. § 1252, 30 C.F.R. § 910.771.13(b); 30 U.S.C. § 1256(a), 30 C.F.R. § 910.771.11. L & R neither filed its application for a permit by the June 9, 1982, deadline nor obtained an approved permit by December 9, 1982. The effect of the injunction is to allow L & R to mine without a valid permit even though L & R remains subject to the performance standards of the permanent program.

L & R's only claim of a legal right is that Mr. Lamb was misinformed by two OSM inspectors that it could continue its interim operation so long as a complete permit application was submitted prior to December 9, 1982. Mr. Lamb's ignorance in being appraised of the law cannot serve as justification for ignorance of requirements.

There has been no showing by the plaintiffs of bad faith in the actions of the Secretary that would give the bankruptcy court authority to stay the OSM's actions. *See, e.g., In the Matter of National Hospital and Institutional Builders Co.,* 658 F.2d 39 (2d Cir.1981), *cert. denied Goldstein v. Garrity,* 454 U.S. 1149, 102 S.Ct. 1014, 71 L.Ed.2d 303 (1982); *Missouri v. Bankruptcy Court,* 647 F.2d 768 (8th Cir.1981), *cert. denied* 454 U.S. 1162, 102 S.Ct. 1035, 71 L.Ed.2d 318

(1982). There was no finding made by the bankruptcy judge that plaintiffs were entitled to continue mining without an approved permit. This showing of a lack of likelihood of plaintiffs' prevailing on the merits is a clear indication that the injunction was improperly issued.

The granting of the injunction harms the public's interest as it circumvents the Congressionally mandated permitting process and allows L & R to mine not only without a valid permit, but allows additionally that L & R may mine anywhere without restriction except as to performance standards.

Finally, the issuance of this injunction violated 28 U.S.C. § 959. Section 959 of Title 28 of the United States Code provides:

[A] debtor in possession shall manage and operate the property in his possession ... according to the requirements of the valid laws of the State in which such property is situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof.

The rehabilitation of the debtor must be done without contravening the law. *In re Conarico Quarries,* 466 F.Supp. 1333 (D.P.R. 1979). To operate a mine in the state of Georgia without a valid permit is a contravention of state law. Section 105 of the Bankruptcy Reform Act gives the bankruptcy judge authority to issue only necessary and appropriate orders, and enjoining a federal regulatory agency from enforcing its permitting requirements is neither necessary nor appropriate.

## CONCLUSION

It is the conclusion of this court that the bankruptcy court not only lacked jurisdiction in this matter, but, even if conceivably it had jurisdiction, it abused its discretion by enjoining the OSM. An appropriate order of reversal will therefore be entered.