*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellant,

v

GARY J. SHAVER, JR.,

Defendant-Appellee.

FOR PUBLICATION
September 5, 2024
9:00 a.m.

No. 361488
Tuscola Circuit Court
LC No. 15-013521-FH

Before: CAVANAGH, P.J., and JANSEN and MALDONADO, JJ.

MALDONADO, J.

This case requires us to consider the retroactive application of the Supreme Court's conclusion in *People v Betts*, 507 Mich 527; 968 NW2d 497 (2021), that the 2011 version of Michigan's Sex Offender Registration Act (SORA), MCL 28.721, *et seq.*, was unconstitutional pursuant to the federal and state constitutional prohibitions against ex post facto laws. Defendant was placed on the sex offender registry in 2004, and he was convicted of failure-to-register offense in 2015 pursuant to the 2011 SORA. The Michigan Supreme Court subsequently decided in *Betts* that the stricter reporting requirements imposed by the 2011 SORA were punitive and therefore constituted impermissible ex post facto punishments. In 2022, defendant filed a motion for relief from judgment, arguing that *Betts* entitled him to reversal of his 2015 conviction. The trial court, without affording the prosecution an opportunity to respond, concluded that *Betts* applied retroactively and reversed defendant's conviction. The prosecution appeals by leave granted,[1] arguing that the court erred by failing to allow it to respond to defendant's motion and that the court erred by concluding that *Betts* applied retroactively rather than prospectively. We agree with both arguments and, therefore, reverse.

---

[1] *People v Shaver*, unpublished order of the Court of Appeals, entered February 15, 2023 (Docket No. 361488).

## I.  BACKGROUND

This appeal stems from defendant's November 23, 2015 guilty plea to failure to comply with the Sex Offender Registration Act (SORA), MCL 28.729 (willful failure to immediately notify law enforcement of change of residence), second offense, MCL 28.729(1)(b), with a fourth-offense habitual offender enhancement, MCL 769.12.[2]  Defendant has a juvenile history of sexual contact with a victim under the age of 13, which occurred in 1998.  In 2004, defendant was adjudicated as a juvenile of three counts of third-degree criminal sexual conduct (CSC-III), MCL 750.520d.  He was discharged from juvenile detention facilities in 2009.  As a sex offender, defendant was required pursuant to SORA to register his change of address with law enforcement.  MCL 28.729 *et seq*.  In 2015, defendant was planning to move to a new home and, accordingly, he updated his address with local law enforcement.  When the prior tenant held over, he was not able to move in as planned.  However, defendant failed to change his address back because he was hoping the situation would be resolved before the authorities noticed anything was awry.  Needless to say, this plan did not work.

In 2016, defendant was sentenced to serve five years of probation and six months in jail.  In 2022, defendant moved for relief from judgment pursuant to MCR 6.500 on the basis of our Supreme Court's holding in *Betts*.  The trial court promptly granted without affording the prosecution any opportunity to respond.  The prosecution moved for reconsideration, arguing that the trial court did not have the authority to grant defendant relief under MCR 6.504(B)(4) without first directing the prosecution to respond to the motion for relief from judgment within a minimum of 56 days and that *Betts* should apply prospectively.  The trial court denied this motion, and this appeal followed.

## II.  STANDARDS OF REVIEW

This Court reviews a trial court's grant or denial of a defendant's motion for relief from judgment under MCR 6.502 for an abuse of discretion.  *People v Clark*, 274 Mich App 248, 251; 732 NW2d 605 (2007).  "A trial court abuses its discretion when it selects an outcome outside the range of reasonable and principled outcomes."  *People v Uphaus*, 278 Mich App 174, 181; 748 NW2d 899 (2008).  "A trial court necessarily abuses its discretion when it makes an error of law."  *People v Franklin*, 500 Mich 92, 100; 894 NW2d 561 (2017) (quotation marks and citation omitted).  This Court also reviews de novo the interpretation and application of the court rules.  *People v White*, 337 Mich App 558, 567; 977 NW2d 138 (2021).  Finally, whether a court decision applies retroactively is a question of law that we review de novo.  *People v Sexton*, 458 Mich 43, 52; 580 NW2d 404 (1998).

---

[2] This appeal was submitted with another application for leave to appeal by defendant, which this Court denied.  See *People v Shaver*, unpublished order of the Court of Appeals, entered February 23, 2017 (Docket No. 336542), p 1.

## III. MCR 6.506(A)

The trial court erred by granting defendant's motion for relief from judgment without affording the prosecution an opportunity to respond.

Whether the trial court was authorized to grant defendant's motion requires consideration of MCR 6.500, which governs criminal procedure for seeking relief from judgment when no further appeal by right is available. When interpreting court rules, we must "consider the rule's plain language." *People v Owens*, 338 Mich App 101, 114; 979 NW2d 345 (2021). "If the plain language is clear, this Court will not engage in further construction or interpretation." *Id*. The trial court may deny the motion for relief from judgment without conducting additional proceedings if the motion "plainly appears from the face of" the submissions that the motion is without merit. MCR 6.504(B)(2). However, when the entire motion is not dismissed pursuant to subrule (B)(2), "the court shall order the prosecuting attorney to file a response . . . ." MCR 6.504(B)(4). "The trial court shall allow the prosecutor a minimum of 56 days to respond." MCR 6.506(A). "As we have stated many times, 'shall' indicates a mandatory directive." *People v Lockridge*, 498 Mich. 358, 387; 870 NW2d 502 (2015). Therefore, courts have no discretion to grant such a motion without granting the prosecution 56 days to respond.

By granting defendant's motion for relief from judgment the day after it was filed, the trial court violated the pertinent court rules because it failed to afford the prosecution 56 days, to respond. Violating the court rules was necessarily an abuse of discretion. *Franklin*, 500 Mich at 100. Defendant concedes the trial court failed to direct a response from the prosecution in violation of the court rules but argues, citing MCR 2.613, that this amounts to a procedural misstep which this Court should review for harmless error. MCR 2.613 provides an error in an order is not grounds for vacating the order unless refusal to vacate appears inconsistent with substantial justice. While this is a rule of civil procedure, it also applies to criminal cases. MCR 6.001(D).

Ultimately, at this stage of the proceeding, the fact that the prosecutor was denied the opportunity to respond is immaterial to the outcome. The resolution of this case is purely a question of law. If *Betts* applies retroactively, then the trial court's decision to grant defendant's motion for relief from judgment must be affirmed. If *Betts* applies prospectively, then it must be reversed. Accordingly, we now consider whether *Betts* is to be applied retroactively.

## IV. OVERVIEW OF SORA AND *BETTS*

SORA has undergone several changes since its inception in 1994. Relevant to this appeal is MCL 28.725(1)(a), which is the specific provision defendant was convicted of violating by failing to update his address in 2015. In 1994, MCL 28.725(1)(a) provided:

> (1) Within *10 days* after any of the following occur, an individual required to be registered under this act shall notify the local law enforcement agency in which his or her new address is located, or the state police or the sheriff's department of the individual's new address:

(a) The individual *changes* his or her address.  [1994 PA 295 (emphasis added).]

This provision was amended in 1999, and referred to in the briefs on appeal as the "pre-2006" SORA.

When defendant was convicted of the registerable offense in 2004, this provision provided:

(1) Within *10 days* after any of the following occur, an individual required to be registered under the act shall notify the local law enforcement agency or sheriff's department having jurisdiction where his or her new residence or domicile is located or the department post of the individual's new residence or domicile:

(a) The individual *changes* his or her residence, or place of work or education . . . .  [1999 PA 85 (emphasis added).]

This provision was amended again in 2005, to add the term "vacates."  2005 PA 132, effective January 1, 2006.  Referred to as the "2006 SORA" throughout the briefs on appeal, it provided:

(1) Within *10 days* after any of the following occur, an individual required to be registered under the act shall notify the local law enforcement agency or sheriff's department having jurisdiction where his or her new residence or domicile is located or the department post of the individual's new residence or domicile:

(a) The individual *changes or vacates* his or her residence, domicile, or place of work or education . . . .  [Emphasis added.]

The 10-day reporting time frame was shortened by 2011 PA 17, effective July 1, 2011. This is the "2011 SORA," which provided:

(1) An individual required to be registered under this act who is a resident of this state shall report in person and notify the registering authority having jurisdiction where his or her residence or domicile is located *not more than 3 business days after any of the following occur:*

(a) The individual *changes or vacates* his or her residence or domicile. [2011 PA 17 (emphasis added).]

This is the version of MCL 28.725(1)(a) defendant was convicted of violating in 2015, and did not change when SORA was amended in 2015.

In *Betts*, the defendant challenged his 2012 failure-to-register conviction for a sex offense he committed in 1993.  *Betts*, 507 Mich 536-537.  The defendant alleged that the changes to SORA since 1994 transformed it from a regulatory scheme to a punishment scheme that imposed significant restrictions on the lives of registrants "such that the retroactive application of those provisions to him violated the Ex Post Facto Clauses of the Michigan and United States Constitutions."  *Betts*, 507 Mich at 533-534, 536; see US Const, art I, § 10; Const 1963, art 1, § 10. The Court determined that the Legislature intended for the 2011 SORA to be a civil remedy rather

-4-

than a criminal punishment. *Id*. at 548. Nevertheless, after applying "each of the *Mendoza-Martinez*[3] factors that the United States Supreme Court identified as relevant in *Smith*,[4]" the Court determined that the 2011 SORA's effect was so punitive "as to negate the State's intention to deem it civil." *Id*. at 549 (quotation marks and citation omitted).

The Court went through the five factors, concluding that the 2011 SORA (1) "bears significant resemblance to the traditional punishments of banishment, shaming, and parole,"(2) "imposed onerous restrictions on registrants by restricting their residency and employment, and it also imposed significant affirmative obligations by requiring extensive in-person reporting,"(3) "promotes the traditional aims of punishment" through deterrence and retributive restrictions, (4) "is connected to a nonpunitive purpose," and (5) contained "demanding and intrusive requirements, imposed uniformly on all registrants regardless of an individual's risk of recidivism" that "were excessive in comparison to SORA's asserted public-safety purpose." *Id*. at 550-562. The Court concluded that, in sum, "the 2011 SORA's aggregate punitive effects negate the state's intention to deem it a civil regulation. Accordingly, the retroactive imposition of the 2011 SORA increases registrants' punishment for their committed offenses in violation of federal and state constitutional prohibitions on ex post facto laws." *Id*. at 562 (citation omitted). The Court further explained that the unconstitutional portions of the 2011 amendments could not be severed to maintain the remaining portions. *Id*. at 563. Revival of a prior version of SORA was also untenable because of concerns about infringing on the Legislature's prerogatives. *Id*. at 571-572.

While the Court made clear that the 2011 SORA was unconstitutional, it did not address whether those whose convictions for violating the 2011 SORA were final could obtain collateral relief. Thus, we are left to determine whether *Betts* applies retroactively.

## V. RETROACTIVE APPLICATION OF *BETTS*

Application of federal and state retroactivity standards leads us to conclude that *Betts* should not apply retroactively.

"The retroactivity of a court's ruling presents an issue of law that this Court reviews de novo." *People v Maxson*, 482 Mich 385, 387; 759 NW2d 817 (2008).

The Supreme Court's decision to strike down the 2011 SORA was based both on the United States Constitution's and 1963 Michigan Constitution's prohibitions on ex post facto laws. *People v Betts*, 507 Mich 527, 542; 968 NW2d 497 (2021). Because the decision arose both from federal and state constitutional law, the federal and state tests for retroactive application must both be considered. See *People v Barnes*, 502 Mich 265, 268-269, 273-274; 917 NW2d 577 (2018).

---

[3] *Kennedy v Mendoza-Martinez*, 372 US 144, 168-169; 83 S Ct 554; 9 L Ed2d 644 (1963) (articulating seven factors relevant for determining if "an Act of Congress is penal or regulatory in character").

[4] *Smith v Doe*, 538 US 84, 97; 123 S Ct 1140; 155 L Ed2d 164 (2003) (articulating five of the factors articulated in *Mendoza-Martinez* that were relevant to determining whether Alaska's sex offender registration law was, in effect, penal or regulatory).

## A.  FEDERAL RETROACTIVITY

Federal law does not mandate retroactive application because *Betts* creates a new rule, *Betts* does not prohibit a certain class of primary conduct, and *Betts* does not establish a watershed rule of criminal procedure.

The first step in the federal analysis of retroactivity is whether the decision created a "new rule."  *Maxson*, 482 Mich at 388, citing *Teague v Lane*, 489 US 288; 109 S Ct 1060; 103 L Ed2d 334 (1989).

> A case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government.  Deciding whether a rule is "new" requires a court to determine whether a state court considering the defendant's claim at the time his conviction became final would have felt *compelled* by existing precedent to conclude that the rule he seeks was required by the Constitution.  If a reasonable jurist would not have felt compelled by existing precedent, then the rule is new.  In other words, the relevant question is not simply whether existing precedent might have *supported* the rule, but whether the rule was *dictated* by then-existing precedent.  [*Id*. at 388-389 (quotation marks, citations, and alterations omitted).]

We conclude that *Betts* announced a new rule because Michigan courts before *Betts* consistently rejected ex post facto challenges to SORA on the ground that the registration requirements of the act were not considered punishment, but a civil remedy.  See *People v Bosca*, 310 Mich App 1, 72; 871 NW2d 307 (2015), rev'd in part on other grounds 509 Mich 851 (2022) ("[T]his Court has consistently ruled that SORA's registration requirement . . . does not constitute punishment . . . ."); see also *People v Golba*, 273 Mich App 603, 620; 729 NW2d 916 (2007) ("SORA is a remedial regulatory scheme furthering a legitimate state interest of protecting the public; it was not designed to punish sex offenders.").  Given the state of the law at the time defendant's conviction became final, no state court considering the claim could have felt compelled by existing precedent to grant the relief now sought.  Therefore, *Betts* established a new rule.

In general, new rules are not applied retroactively, but as our Supreme Court has explained, there are exceptions:

> The first exception is whether the rule is a "substantive rule of constitutional law," defined as a rule forbidding certain primary conduct or a rule prohibiting a certain category of punishment for a class of defendants because of their status or offense. . . .  The second exception is whether the new rule is a "watershed rule" of criminal procedure.  In order to qualify as watershed, a new rule must be necessary to prevent an impermissibly large risk of an inaccurate conviction and alter our understanding of the bedrock procedural elements essential to the fairness of a proceeding.  [*Barnes*, 502 Mich at 271-272 (quotation marks, citations, and alterations omitted).]

The first exception is whether the rule is a "substantive rule of constitutional law," which is defined as "a rule forbidding certain primary conduct or a rule prohibiting a certain category of punishment for a class of defendants because of their status or offense." *Id*. at 271. As the prosecution argues, this exception does not apply because *Betts* did not narrow the range of conduct SORA punishes. Defendant would be required to register his address under any iteration of SORA in existence since 1999. *Betts*'s categorization of the 2011 SORA as punitive does not make it a substantive rule of constitutional law.

The second type of special concern or exception to the rule against retroactive application of judicial decisions creating new rules is on the basis of whether the new rule is a "watershed rule" of criminal procedure. *Id*. at 271 (quotation marks and citation omitted). "In order to qualify as watershed, a new rule must be necessary to prevent an impermissibly large risk of an inaccurate conviction and alter our understanding of the bedrock procedural elements essential to the fairness of a proceeding." *Id*. (quotation marks, citation, and alterations omitted). In other words, a rule qualifies as "watershed" if it is needed to make a conviction more accurate. "Although the precise contours of this exception may be difficult to discern, [the Supreme Court of the United States has] usually cited *Gideon v Wainwright*, 372 US 335 [83 S Ct 792, 9 L Ed 2d 799] (1963), holding a defendant has the right to be represented by counsel in all criminal trials for serious offenses, to illustrate the type of rule coming within the exception." *Saffle v Parks*, 494 US 484, 495; 110 S Ct 1257, 108 L Ed 2d 415 (1990). The "watershed rule" of criminal procedure exception to the rule against retroactive application of new rules to already closed cases is extremely limited. Because defendant's failure-to-register conviction would have arisen under any iteration of SORA since its inception in 1999, application of the 2011 SORA to him did not create an impermissibly large risk of an inaccurate conviction or alter the fairness of the proceedings concerning his failure-to-register conviction. More generally, *Betts* did not establish a procedural rule because its application has no bearing on the process through which criminal convictions are obtained.

## B. STATE RETROACTIVITY

Our conclusion that *Betts* does not apply retroactively pursuant to federal standards is not the end of our analysis because "[a] state may accord broader effect to a new rule of criminal procedure than federal retroactivity jurisprudence accords." *Maxson*, 482 Mich at 392. Therefore, we now turn to whether *Betts* is retroactive pursuant to Michigan law. Michigan's "state-law test" for retroactive application of new rules established by case law requires courts to "consider: (1) the purpose of the new rule; (2) the general reliance on the old rule; and (3) the effect on the administration of justice." *Barnes*, 502 Mich at 273, quoting *People v Hampton*, 384 Mich 669; 187 NW2d 404 (1971).

The first prong of the *Hampton* test requires an analysis of the new rule's purpose. "Under the 'purpose' prong, a law may be applied retroactively when it concerns the ascertainment of guilt or innocence; however, a new rule of procedure which does not affect the integrity of the fact-finding process should be given prospective effect." *Maxson*, 482 Mich at 393 (quotation marks, citations, and alteration omitted). "The most important factor is the first one." *People v Woods*, 416 Mich 581, 618; 331 NW2d 707 (1982). This prong gravitates against retroactive application for reasons similar to the above discussion of the "watershed exception." Application of *Betts* has no bearing on "the integrity of the fact-finding process" and does not create a rule of procedure. Maxson, 482 Mich at 393 (quotation marks and citation omitted). Put differently, application of

this rule is not going to impact the chances of a wrongful conviction. Therefore, the purpose of the rule weighs in favor of prospective application.

The second prong of the *Hampton* test requires an analysis of the extent to which the old rule has been relied upon. Finally, the third prong of the *Hampton* test requires consideration of the new rule's effect on the administration of justice. "Because the amount of past reliance will often have a profound effect on the administration of justice, the second and third factors are often dealt with together." *People v Sexton*, 458 Mich 43, 63; 580 NW2d 404 (1998). There is likely to be greater reliance "[w]hen a decision overrules settled law" as opposed to "cases in which the law was unsettled or unknown." *Id*. at 63.

An examination of caselaw discussing these two factors provides useful guideposts for our analysis. In *People v Kennedy*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 363575); slip op at 4-5, this Court concluded that factors two and three weighed in favor of retroactive application of the new prohibition against one-person grand juries because "indictment by a one-man grand jury does not appear to have ever been a ubiquitous or commonly used practice" and because it appeared unlikely that retroactive application "undermine the validity of a large number of convictions." The opinion did not specify how many convictions would be undermined but rather seemed to be inferring this based on the clear rarity of the practice. *Id*. It seems clear that there was greater reliance upon the 2011 SORA than on one-person grand juries. In *Barnes*, 502 Mich at 273-275, this Court determined that the decision to render the sentencing guidelines advisory did not "qualify for the *extraordinary remedy* of retroactive application to cases on collateral review" partly because virtually every felony sentence imposed pursuant to the guidelines would be impacted. (Emphasis added.) Clearly, reliance on the 2011 SORA was less widespread than the sentencing guidelines. In *People v Quinn*, 305 Mich App 484, 490; 853 NW2d 383 (2014), this Court considered whether the Supreme Court's decision "to reestablish the common-law rule that a person may resist an unlawful arrest" applied retroactively. Because "prosecutors and courts relied on" the old rule "and full retroactivity could upset the public's interest in the finality of convictions," this Court determined that the new rule "should be given limited retroactive effect to cases in which a defendant raised the issue on appeal and the defendant either preserved it in the trial court or can demonstrate plain error affecting substantial rights under Carines." *Id*. This unique approach would not help defendant because he pleaded guilty. In *Maxson*, 482 Mich at 398-399, the Supreme Court concluded that factors two and three weighed heavily against retroactive application of the rule that defendants who pleaded guilty are entitled to counsel on direct appeal because providing relief to "a small number of defendants" would "not outweigh the certainty that" a significant number of offenders who pleaded guilty "would inundate the appellate process with new appeals." The Court emphasized the state's interest in preserving its limited resources for those currently charged with crimes. *Id*. In *Sexton*, 458 Mich at 57, the Supreme Court concluded that retroactive application of the rule that police must inform detained suspects when their attorney attempts contact "would be extremely disruptive to the administration of justice" because it would "undermine the validity of a large number of convictions and burden the criminal justice system with numerous retrials." Notably, retroactive application of *Betts* would not result in retrials.

Returning to the issue before us, in *Betts*, the Supreme Court "overrule[d] settled law" by upending the 2011 SORA. *Betts*, 507 Mich at 566-574 (discussing the inadequacy of severability and revival to remedy the 2011 SORA's constitutional defects). Every time a court sanctioned

somebody who was convicted of a sex offense prior to implementation of the 2011 SORA for violating the 2011 SORA, it did so in reliance upon the old rule. This "amount of past reliance" could "have a profound effect on the administration of justice" because everybody convicted of violating the 2011 SORA whose underlying offense was committed before its implementation would be entitled to reversal. *Sexton*, 458 Mich at 63. In his motion for relief from judgment, plaintiff argued that the reach of the new rule was "limited" because it only affected "a narrow set of people" whose underlying crimes "were committed before July 1, 2011, and whose failure to register convictions occurred after that date." However, despite describing this reach as "narrow," defendant did not provide evidence regarding the number of people who would be affected.

Simply put, the breadth of the impact *Betts* would have if it were applied retroactively is not easily ascertainable, and as noted, defendant did not provide the trial court with any concrete information regarding its breadth.[5] In its motion for reconsideration and again on appeal, the prosecution has presented exhibits suggesting that, as of the start of 2022, retroactive application would affect 306 probationers and parolees, but the prosecution also correctly notes that this does not include "those hundreds—if not thousands—of offenders who are not serving sentences who could attempt to seek relief" from old convictions that have become final. While we know there was broad reliance on the prior rule, we simply do not know the toll that retroactive application of *Betts* would have on the administration of justice. However, we do know that this decision would apply to an entire class of criminal convictions that were committed and finalized between 2011 and 2021, so it is clear that this would cause some strain on the administration of justice. All of this strain would be the result of valid reliance upon the 2011 SORA. We also note that, while factors two and three present closer calls, factor one clearly weighs against retroactivity. Therefore, given the information available to us, we view the second and third factors as weighing slightly against retroactive application.

On balance, we conclude that Michigan's standard for retroactive application of judicial decisions weighs against retroactive application of *Betts*. Therefore, we conclude that *Betts* applies prospectively, and those whose convictions were finalized before *Betts* was decided are not entitled to collateral relief.

---

[5] Defendant bears the burden to establish that he is entitled to relief pursuant to MCR 6.502. *People v Neuman*, 492 Mich 853; 817 NW2d 93 (2012). We then review for abuse of discretion the trial court's assessment of whether defendant met his burden. *Clark*, 274 Mich App at 251.

## VI. CONCLUSION

The trial court erred by deciding defendant's motion for relief from judgment without affording the prosecution an opportunity to respond. Moreover, the trial court erred by concluding that *Betts* applies retroactively. Because our decision regarding *Betts* necessarily decides the merits of defendant's motion, no additional proceedings below are warranted. Therefore, we reverse the trial court's order granting defendant's motion for relief from judgment and remand this case for the limited purpose of reinstating defendant's conviction. We do not retain jurisdiction.

/s/ Allie Greenleaf Maldonado
/s/ Mark J. Cavanagh
/s/ Kathleen Jansen