MARKMAN, J.
At issue here is whether the United States Supreme Court’s decision in Halbert v Michigan, 545 US 605; 125 S Ct 2582; 162 L Ed 2d 552 (2005), should be applied retroactively to cases in which a *387 defendant’s conviction has become final. In lieu of granting leave to appeal, we affirm the judgment of the trial court denying defendant’s motion for relief from judgment, and we conclude under federal and state law that Halbert should not be applied retroactively to cases in which a defendant’s conviction has become final.
I. FACTS AND PROCEDURAL HISTORY
In 2001, defendant pleaded guilty to two counts of second-degree criminal sexual conduct, and subsequently failed to request appointed counsel or to file a direct appeal. On June 23, 2005, the United States Supreme Court issued Halbert, which held that indigent defendants who plead guilty to criminal offenses are entitled to appointed appellate counsel on direct appeal. Id. at 610. After Halbert was decided, defendant requested appointed counsel in the instant motion for relief from judgment. However, because defendant’s conviction was final before Halbert was decided, defendant is only entitled to counsel if the rule announced in Halbert is applied retroactively.
II. STANDARD OF REVIEW
The retroactivity of a court’s ruling presents an issue of law that this Court reviews de novo. People v Sexton, 458 Mich 43, 52; 580 NW2d 404 (1998).
III. ANALYSIS
A. RETROACTIVITY UNDER FEDERAL LAW
“New legal principles, even when applied retroactively, do not apply to cases already closed.” Reynoldsville Casket Co v Hyde, 514 US 749, 758; 115 S Ct 1745; 131 L Ed 2d 820 (1995). This is because “at some point, *388 ‘the rights of the parties should be considered frozen’ and a ‘conviction . . . final.’ ” Id., quoting United States v Estate of Donnelly, 397 US 286, 296; 90 S Ct 1033; 25 L Ed 2d 312 (1970) (Harlan, J., concurring). There are, however, “certain special concerns — related to collateral review of state criminal convictions — that affect which cases are closed, for which retroactivity-related purposes, and under what circumstances.” Id.
In Teague v Lane, 489 US 288; 109 S Ct 1060; 103 L Ed 2d 334 (1989), the United States Supreme Court set forth the federal standard for determining whether a rule regarding criminal procedure should be applied retroactively to cases in which a defendant’s conviction has become final. Teague established the “general rule” that “new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced.” Id. at 310. However, Teague laid down two exceptions to this general rule: first, a new rule should be applied retroactively if it places “ ‘certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe,’ ” id. at 307 (citation omitted); and second, a new rule should be applied retroactively “if it requires the observance of those procedures that... are implicit in the concept of ordered liberty.” Id. (citations and internal quotation marks omitted).
Thus, the first question under Teague is whether the rule in Halbert constitutes a new rule. “ ‘[A] case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government.’ ” Penry v Lynaugh, 492 US 302, 314; 109 S Ct 2934; 106 L Ed 2d 256 (1989) (citation omitted). Deciding whether a rule is “new” requires a court to determine “whether ‘a state court considering [the defendant’s] claim at the time his conviction became *389 final would have felt compelled by existing precedent to conclude that the rule [he] seeks was required by the Constitution.’ ” O’Dell v Netherland, 521 US 151, 156; 117 S Ct 1969; 138 L Ed 2d 351 (1997) (emphasis added and citations omitted). If a reasonable jurist would not have felt compelled by existing precedent, then the rule is new. Beard v Banks, 542 US 406, 413; 124 S Ct 2504; 159 L Ed 2d 494 (2004). In other words, the relevant question is not simply whether existing precedent might have supported the rule, but whether the rule “was dictated by then-existing precedent.” Id. at 413 (emphasis in original).
We conclude that the rule in Halbert constitutes a new rule. Although Halbert found support in the earlier United States Supreme Court decision of Douglas v California, 372 US 353; 83 S Ct 814; 9 L Ed 2d 811 (1963), that case did not clearly require the outcome in Halbert. Douglas held that when a state grants a first appeal as of right, the state is required to appoint appellate counsel for indigent defendants. Id. at 357. Because Michigan does not grant an appeal as of right to a defendant who pleads guilty,[1] and because the United States Supreme Court had previously decided that appointment of appellate counsel is unnecessary when an appellate court, such as a state’s highest court, has the discretion to choose whether to reach the merits of a defendant’s appeal, Ross v Moffitt, 417 US 600; 94 S Ct 2437; 41 L Ed 2d 341 (1974), a reasonable jurist could well conclude that Douglas did not compel the result in Halbert.
Because “it is more difficult... to determine whether [the Supreme Court] announce [d] a new rule *390 when a decision extends the reasoning of [its] prior cases,” Saffle v Parks, 494 US 484, 488; 110 S Ct 1257; 108 L Ed 2d 415 (1990), the “new rule” principle is designed to “validate[] reasonable, good-faith interpretations of existing precedents made by state courts even though they are shown to be contrary to later decisions.” Butler v McKellar, 494 US 407, 414; 110 S Ct 1212; 108 L Ed 2d 347 (1990). In Halbert, the dissenting Supreme Court justices argued against extending Douglas, further supporting the conclusion that Douglas did not compel the result in Halbert and that this Court’s previous interpretation was reasonable.
Because the rule in Halbert was new, the remaining question under Teague is whether either of the two Teague exceptions applies. The first exception is clearly inapplicable, as the rule in Halbert does not concern a rule that “ 'forbid[s] criminal punishment of certain primary conduct. .. [or] prohibits] a certain category of punishment for a class of defendants because of their status or offense.’ ” O’Dell, supra at 157 (citation omitted). Thus, the only issue is whether Halbert constituted a “watershed” decision that involved “procedures . . . implicit in the concept of ordered liberty.” Graham v Collins, 506 US 461, 478; 113 S Ct 892; 122 L Ed 2d 260 (1993) (citations and quotation marks omitted).
The United States Supreme Court has repeatedly emphasized the limited scope of the second Teague exception. The Court has observed that because any such rule “would be so central to an accurate determination of innocence or guilt [that it is] unlikely that many such components of basic due process have yet to emerge, it should come as no surprise that we have yet to find a new rule that falls under the second Teague exception.” Beard, supra at 417 (citations and quota *391 tion marks omitted). The Supreme Court has referred to the right to counsel set forth in Gideon v Wainwright, 372 US 335; 83 S Ct 792; 9 L Ed 2d 799 (1963), as an example of a rule that would fall into the second Teague exception. It is significant that in referring to this example, the Supreme Court observed, “In providing guidance as to what might fall within this exception, we have repeatedly referred to the rule of Gideon (right to counsel), and only to this rule.” Beard, supra at 417 (emphasis added and citation omitted).
Notably, the Sixth Amendment right to counsel articulated in Gideon and its progeny has a constitutional basis distinct from that underlying the Douglas line of cases addressing the right to counsel on appeal that are rooted in the Equal Protection and Due Process clauses of the Fourteenth Amendment. Further, considering that Halbert is unlikely to apply to any situation other than Michigan’s unique legislative system of appeals from plea-based convictions, we agree with the Sixth Circuit that “ [i]t does not represent a shift in ‘bedrock procedural elements’ and it cannot be said to be ‘on par’ with Gideon.” Simmons v Kapture, 474 F3d 869, 887 (CA 6, 2007) (Reeves, J., dissenting), adopted by Simmons v Kapture, 516 F3d 450, 451 (CA 6, 2008) (holding that Halbert is not retroactive under Teague).
Additionally, a state is not required to provide any appellate proceedings at all for defendants who plead guilty. Halbert, supra at 610. In Goeke v Branch, 514 US 115; 115 S Ct 1275; 131 L Ed 2d 152 (1995), the Supreme Court held that “[b]ecause due process does not require a State to provide appellate process at all, a former fugitive’s right to appeal cannot be said to be so central to an accurate determination of innocence or guilt as to fall within this exception. . . .” Id. at 120 *392 (citations and quotation marks omitted).[2] Considering these holdings, the provision of appointed counsel for such a proceeding can hardly be said to be “implicit in the concept of ordered liberty.” Accordingly, in our judgment, Halbert cannot be construed as a “watershed” decision, neither of the Teague exceptions applies, and Halbert thus is not retroactive under federal retroactivity jurisprudence.
B. RETROACTIVITY UNDER STATE LAW
The conclusion that Halbert is not retroactive under federal law does not end our analysis, however. A state may accord broader effect to a new rule of criminal procedure than federal retroactivity jurisprudence accords. Danforth v Minnesota, _ US _; 128 S Ct 1029, 1045; 169 L Ed 2d 859 (2008).[3] Accordingly, we turn to the question of whether Halbert should be deemed retroactive under state law. Michigan law has regularly declined to apply new rules of criminal procedure to *393 cases in which a defendant’s conviction has become final. See Sexton, supra (requirement that the police inform a suspect when retained counsel is available for consultation); People v Stevenson, 416 Mich 383; 331 NW2d 143 (1982) (abrogation of common-law “year and a day” rule); People v Young, 410 Mich 363; 301 NW2d 803 (1981) (preconviction filing of habitual offender notice); People v Smith, 405 Mich 418, 433; 275 NW2d 466 (1979) (repeal of criminal sexual psychopath statute hairing criminal action against those adjudicated criminal sexual psychopaths); People v Markham, 397 Mich 530; 245 NW2d 41 (1976) (double jeopardy “same transaction” test); People v Rich, 397 Mich 399; 245 NW2d 24 (1976) (erroneous “capacity standard” jury instruction); People v Butler, 387 Mich 1; 195 NW2d 268 (1972) (waiver of a defendant’s constitutional rights in taking a guilty plea); Jensen v Menominee Circuit Judge, 382 Mich 535; 170 NW2d 836 (1969) (constitutional right to appeal in criminal cases); People v Woods, 382 Mich 128; 169 NW2d 473 (1969) (custodial interrogation procedures); People v Fordyce, 378 Mich 208; 144 NW2d 340 (1966) (custodial interrogation procedures).
In Sexton, we considered the following three factors to determine whether a new rule of criminal procedure should be applied retroactively:
(1) the purpose of the new rules; (2) the general reliance on the old rule[;] and (3) the effect of retroactive application of the new rule on the administration of justice. [Sexton, supra at 60-61, citing People v Hampton, 384 Mich 669, 674; 187 NW2d 404 (1971).]
Under the “purpose” prong, a law may be applied retroactively when it “ ‘concerns the ascertainment of guilt or innocence;’ ” however, “ ‘a new rule of procedure . . . which does not affect the integrity of the fact-finding process should be given prospective effect.’ ” Id. at 63, quoting Young, supra at 367. By pleading guilty, defendants are not contesting their guilt, but admitting it freely. Thus, the appointment of *394 counsel on appeal does not concern the ascertainment of guilt or innocence. See Goeke, supra at 120. Rather, an appeal from a guilty plea concerns only the procedures of the plea process; the defendant has already admitted substantive guilt while represented by counsel. It is hard to imagine a more dispositive process by which guilt can be accurately determined, and in which the appellate process becomes less central to an accurate determination of guilt, than that in which a full admission to criminal conduct has come from the mouth of the defendant himself under oath,[4] and in an environment in which the defendant has been accorded every protection against a coerced or mistaken confession. Consequently, the first Sexton prong counsels against retroactivity.
The second Sexton prong, which concerns the “general reliance on the old rule,” does not, in our judgment, strongly counsel either way in this case. When considering “reliance,” a court examines whether individual persons or entities have been “adversely positioned . . . in reliance” on the old rule. Rowland v Washtenaw Co Rd Comm, 477 Mich 197, 221; 731 NW2d 41 (2007). The dissent implies that defendants who pleaded guilty between 1994 and 2005, as a class, were “penalized by the general reliance” on the old rule.[5] Post at 411. We disagree. To be considered to have detrimentally relied on the old rule, a defendant must have relied on the rule in not pursuing an appeal and have suffered harm as a result of that reliance. We recognize that ascertaining the precise number of defendants who meet this standard is impossible, but clearly all defendants who *395 pleaded guilty between 1994 and 2005 do not meet this standard. Indeed, appeals of guilty pleas before the old rule indicate that it is likely that very few do.
First, only a very small percentage of defendants who pleaded guilty before the old rule became effective actually appealed their pleas. Before the old rule was implemented in 1994, an estimated 89% to 94% of defendants who pleaded guilty did not appeal their pleas.[6] During this period, indigent defendants were appointed appellate counsel if they chose to pursue an appeal. Yet, fewer than one in ten of all defendants who pleaded guilty actually decided to appeal their pleas. The large number of defendants who pleaded guilty but did not seek appeal can be explained by a variety of factors, most important of which are the lack of an appealable issue after the plea and the risk inherent in appealing a guilty plea.[7] Therefore, it can be assumed that most defendants who pleaded guilty between 1994 and 2005 and did not appeal, rather than not appealing *396 because of reliance on the old rule, did not appeal because of factors unrelated to, and existing before, the old rule.
Second, a defendant who relied on the old rule in not filing an appeal must also have suffered actual harm from that reliance in order to have “detrimentally relied” on the old rule. That is, the old rule would have had to preclude defendant from filing an appeal that would have resulted in some form of relief. Out of that small number of defendants who pleaded guilty before the old rule and subsequently appealed the plea, only a veiy limited number received relief on appeal. In 1994, before the old rule was adopted, the Court of Appeals estimated that only three to four percent of guilty plea cases that came before it resulted in some form of relief.[8] The State Appellate Defender Office (SADO), however, estimates that approximately 27% of pleading indigent defendants whom it represented received some measure of relief.[9]
Accordingly, the number of pleading defendants who could be said to have detrimentally relied on the old rule would range somewhere between 0.18% (6% x 3%) and 2.97% (11% x 27%), combining the lowest and highest Court of Appeals/House Legislative Analysis and SADO figures. Thus, there is no reason why it should not be *397 assumed that, at a minimum, 97% to 99% of the defendants who pleaded guilty under the old rule would not have received relief under the new rule.[10] While it cannot be disputed that some number of defendants would receive relief if Halbert were made retroactive,[11] this would be true of extending any new rule retroactively, yet this is not generally done. Instead, we must consider, as best as possible, the extent of the detrimental reliance on the old rule, and then balance this against the other Sexton factors, as well as against the fact that each defendant who pleaded guilty has received all the rights under the law to which he or she was entitled at the time. Here, we conclude that the extent of the detrimental reliance is remarkably minimal and, as explained above and below, does not outweigh the other Sexton factors that clearly counsel against retroactive application.
Finally, affording appointed counsel to defendants whose appeals became final before Halbert would have a markedly adverse effect on the administration of justice, the third Sexton prong. The state’s strong interest in finality of the criminal justice process would be undermined as presumably significant numbers of the incarcerated population would be entitled to avail themselves of appointed counsel and new appeals, de *398 spite having knowingly and intelligently pleaded guilty to criminal conduct while represented by counsel.
“[FJinality of state convictions is a state interest. .. that States should be free to evaluate, and weigh the importance of, when prisoners held in state custody are seeking a remedy for a violation of federal rights by their lower courts.” Danforth, supra at 1041 (emphasis in original). The principle of finality “is essential to the operation of our criminal justice system.” Teague, supra at 309. The state’s interest in finality discourages the advent of new rules from “continually forcing] the State[] to marshal resources in order to keep in prison defendants whose trials and appeals conformed to then-existing constitutional standards,” id. at 310 (emphasis omitted), and also “serves the State’s goal of rehabilitating those who commit crimes because ‘[rehabilitation] demands that the convicted defendant realize that he is justly subject to sanction, that he stands in need of rehabilitation.’ ” Kuhlmann v Wilson, 477 US 436, 453; 106 S Ct 2616; 91 L Ed 2d 364 (1986), quoting Engle v Isaac, 456 US 107, 128 n 32; 102 S Ct 1558; 71 L Ed 2d 783 (1982) (citation and quotation marks omitted). Accordingly, applying Halbert retroactively to cases in which a conviction has become final would have a markedly adverse effect on the administration of justice.
Thus, although retroactive application of Halbert would potentially provide a small number of defendants with some form of relief, this does not outweigh the certainty that by applying Halbert retroactively, many guilty-pleading defendants whose convictions have become final would inundate the appellate process with new appeals. In light of the limited judicial resources of the state, it is our judgment that those resources would be better preserved for defendants currently charged— *399 some of whom may be innocent or otherwise entitled to relief — than for defendants who have knowingly pleaded guilty and presumably accepted the consequences of their decisions. Thus, the third prong weighs far more heavily against retroactive application than the second prong weighs for retroactive application. Considered together, all of the Sexton factors, therefore, strongly counsel against applying Halbert retroactively under state law to cases in which a defendant’s conviction has become final.
IV FURTHER RESPONSE TO THE DISSENT
(1) The dissent asserts that we are “swerv[ing] and dodg[ing]” decisions of the United States Supreme Court by “refusing” to make Halbert retroactive in order to “deny indigent defendants access to justice.” Post at 403. The premise of this overheated assertion is that the United States Supreme Court has already rejected our reasoning, but its repetition by the dissent does not make this so. We have set forth what we think the law is, and we have followed Teague and other relevant decisions to their logical and reasonable conclusions. Whatever the dissent’s personal conceptions of what should be required by the Constitution, we have applied what this Court and the United States Supreme Court have said the Constitution requires.
(2) The dissent describes us as “arbitrarily” cutting off constitutional relief to defendants whose plea-based convictions became final between 1994 and 2005. We fail to see what is “arbitrary” about applying existing precedent to determine whether Halbert is retroactive and, having concluded that it is not, employing the date of the Halbert decision to determine who precisely is entitled to the benefits of that decision. Using the date of a decision that has granted a right as the starting *400 date for entitlement to that right has long been the standard procedure of this Court. See Woods, supra at 138-139.
(3) The dissent believes that because Halbert overruled this Court’s determination in People v Bulger, 462 Mich 495; 614 NW2d 103 (2000), that MCL 770.3a was constitutional, his position in the instant case should prevail. This overlooks that the issues in Bulger and this case are simply different. Unlike Bulger, this case does not concern whether the right to first-tier appellate counsel exists; Halbert has decided this. Rather, the present issue concerns the extent to which Halbert is retroactive. Indeed, in Bulger, we expressly declined to address the constitutionality of MCL 770.3a because it did not apply to the defendant in that case. Id. at 506 (“Because this new statute does not apply to defendant, the question of its constitutionality is not before us.”).[12] While the analysis employed by the Supreme Court in recognizing a constitutional right may well be relevant in some instances in assessing the right’s retroactivity, it will rarely be conclusive. Indeed, Teague and Danforth themselves confirm that assessments of retroactivity are independent of the recognition of the right itself and that the two determinations involve different questions and require the evaluation of different interests.
(4) The dissent concludes that precedent “compelled” the result in Halbert by declaring the holding in Ross to be so clear that it “does not support a claim that a reasonable jurist could conclude that the rule of Halbert was not compelled.” Post at 407. We think the simple fact that Halbert was a 6 to 3 decision, and reversed a majority of this Court, makes sufficiently clear that *401 reasonable jurists could conclude that Halbert was not “compelled.” Further, even the trial court that granted conditional habeas relief in Bulger recognized that this Court’s position was “not contrary to any clearly established Supreme Court precedent,” Bulger v Curtis, 328 F Supp 2d 692, 703 (ED Mich, 2004) (emphasis added).[13]
(5) The dissent complains that we “rel[y] on the presumption that all defendants who plead guilty are indeed guilty.” Post at 409. When a defendant pleads guilty, he admits guilt under oath. We freely admit that there is some sense on our part that “defendants who plead guilty are indeed guilty.” By taking an oath, defendants give courts permission to presume that admissions of guilt are true. This Court has made clear that after conviction, defendants are no longer cloaked with a presumption of innocence, People v Mateo, 453 Mich 203, 222; 551 NW2d 891 (1996) (WEAVER, J., concurring), thereby permitting this Court to presume that those who have pleaded guilty are, in fact, guilty.
More importantly, Halbert did not address the ascertainment of guilt, but rather discussed the complexity of appeals and why counsel is often required to navigate this process. Halbert, supra at 621 (“Navigating the appellate process without a lawyer’s assistance is a perilous endeavor for a layperson . . . .”). Although the opinion refers to “ ‘myriad and often complicated’ substantive issues” potentially involved in appeals, at no time does it equate these issues with the ascertainment of guilt. Id. (citation omitted).
Moreover, not only are several of the potential appellate issues that the dissent identifies clearly unrelated *402 to questions of guilt (jurisdictional defects, double jeopardy claims, and claims that the state had no right to proceed such as having charged a defendant under an inapplicable statute), but it is nonsensical for the dissent to conclude that the Supreme Court determined that claims involving “ ‘constitutional defects that are irrelevant to [a defendant’s] factual guilt’ ” apply to the guilt or innocence of a defendant. Post at 410 n 2, quoting Bulger, supra at 561 (CAVANAGH, J., dissenting) (emphasis added).
Although we recognize that such procedural matters may well be essential and, in some cases, constitutionally mandated, their existence does not automatically convert them into issues concerning guilt or innocence. The United States Constitution provides criminal defendants the right to due process of law. US Const, Am V. The question of whether a defendant has received due process is different in many contexts from whether a given procedure affects the “integrity of the fact-finding process.” Sexton, supra at 63 (internal citation and quotation marks omitted). By conflating, as the dissent has done, whether a procedure is necessary for due process with whether a procedure ascertains a defendant’s guilt or innocence, the dissent would compel that virtually all new rules of criminal procedure become retroactive. Perhaps the dissent could explain what new rules would not be retroactive under the analysis that he sets forth. And, while such automatic retroactivity may be the dissent’s personal preference, Sexton’s and Teague’s very existence refute that proposition as the preference of the law.
V CONCLUSION
For these reasons, we hold that Halbert does not apply retroactively to cases in which a defendant’s *403 conviction has become final, either under federal or state retroactivity jurisprudence. Accordingly, we affirm the trial court’s denial of defendant’s motion for relief from judgment.
Taylor, C.J., and Weaver, Corrigan, and Young, JJ., concurred with MARKMAN, J.

 Defendants who seek to appeal their guilty pleas must file an application for leave to appeal with the Court of Appeals. MCR 7.203(A)(1)(b).

 “[A] State may not ‘bolt the door to equal justice’ to indigent defendants” once it has provided an avenue of appeal. Halbert, supra at 610, quoting Griffin v Illinois, 351 US 12, 24; 76 S Ct 585; 100 L Ed 891 (1956). This holding only emphasizes our position that Halbert is not a “watershed” decision like Gideon because Halbert is rooted in the Equal Protection and Due Process clauses of the Fourteenth Amendment, rather than in the Sixth Amendment right to counsel.

 To conclude that Teague was intended to apply strictly to federal habeas review, and not to state court proceedings, Danforth argued that: (1) Teague was silent regarding a state’s ability to give broader effect to federal constitutional decisions, Danforth, supra at 1039; (2) Teague was based on the federal habeas statute, 28 USC 2241 et seq., a “statutory authority that extends only to federal courts,” Danforth, supra at 1040; and (3) Teague relied on considerations of comity and federalism, which “are [concerns] unique to federal habeas review of state convictions.” Id. at 1041 (emphasis in original). Accordingly, the analysis in Teague binds only federal courts on habeas review, and a state court may use a different test to give broader effect to a new rule of criminal procedure established by the United States Supreme Court.

 Since March 1, 1995, this Court has required all defendants who plead guilty to be placed under oath before doing so. MCR 6.302(A).

 1994 PA 374, which implemented Proposal B, became effective December 27, 1994.

 The State Appellate Defender Office estimated, on the basis of the cases it handled, that less than six percent of guilty pleas were appealed. House Legislative Analysis Section, Second Analysis, 1994 PA 374, 375 (January 5, 1995), p 2. The House Legislative Analysis Section’s November 2, 1993, analysis stated that “[e]stimates put the proportion of people who appeal after pleading guilty at 11 percent or substantially less.” House Legislative Analysis Section, First Analysis, House Bill 4070, 4071 (November 2, 1993) (“HB 4070-4071 Analysis”), p 3.

 Under MCR 6.312, if an appellate court vacates a defendant’s guilty plea, “the case may proceed to trial on any charges that had been brought or that could have been brought against the defendant if the plea had not been entered,” including charges more severe than the charge or charges to which the defendant pleaded guilty or charges that the prosecutor agreed to drop in exchange for the plea agreement. The risk of proceeding to trial on more serious or additional charges often persuades defendants not to pursue a plea appeal. Robertson, Felony Plea Appeals in Michigan — 1992; (Lansing: Michigan Appellate Assigned Counsel System, 1992), p 2. See also People v Sutton, 158 Mich App 755; 405 NW2d 209 (1987).

 House Legislative Analysis Section, First Analysis, Ballot Proposal B, 1994 General Election, (October 14, 1994), p 4.

 HB 4070-4071 Analysis, supra at 2; Senate Fiscal Agency, First Analysis, S.J.R. D (Feb 18, 1993), p 2. According to SADO, 42% of the guilty pleas it appealed were entirely dismissed without being heard. Cases “not heard” were typically handled by a “short, simple affirmation of the trial court’s decision.” Id. For the remaining 58% that were not dismissed without a hearing, 47% of those appeals received relief. Thus, using the SADO figures, of every six SADO-represented, guilty-pleading defendants who appealed, approximately 1.6, or 27%, secured some measure of relief ((42% x 0%) + (58% x 47%)).

 Moreover, if anything, these figures overstate the number of defendants who adversely relied on the old rule. A defendant, for example, who has received relief in the form of resentencing, or the vacating of a plea, has not necessarily been adversely affected if he or she ultimately receives the same sentence after resentencing or is reconvicted after trial.

 Appellate “relief,” of course, far more often than not consists of such things as requiring judicial rearticulation of a sentence, affording additional rights of allocution, correcting a presentence report, adjusting restitution amounts, clarifying the application of guidelines, and vacating consecutive sentences, as opposed to reversing a conviction or reducing a sentence.

 Only later, in People v Harris, 470 Mich 882 (2004), did we hold that, “[p]ursuant to the analysis provided by this Court in Bulger, MCL 770.3a is constitutional.”

 In light of the Sixth Circuit’s conclusion in Simmons that Halbert is not retroactive under Teague, and the dissent’s assertion that “Teague does not control the measure of retroactivity applied by a state court,” post at 408, we see no reason to further discuss the dissent’s Teague analysis.