# Syllabus

Chief Justice:
Megan K. Cavanagh

Justices:
Brian K. Zahra
Richard H. Bernstein
Elizabeth M. Welch
Kyra H. Bolden
Kimberly A. Thomas
Noah P. Hood

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Kimberly K. Muschong

PEOPLE v SHAVER

Docket No. 167736. Argued December 11, 2025 (Calendar No. 2). Decided May 29, 2026.

In 2004, defendant, Gary J. Shaver, Jr., was sentenced as a juvenile for three counts of third-degree criminal sexual conduct. Under the version of Michigan's Sex Offenders Registration Act (SORA) in effect at the time, defendant was required to register as a sex offender and notify law enforcement of any change of address within 10 days. In August 2010, defendant was convicted of failure to comply with SORA registration requirements. Approximately one year later, the 2011 version of SORA went into effect, shortening the reporting period for address changes from 10 days to 3 business days. In September 2015, defendant planned to move into a new home, and he updated his address with local law enforcement. However, defendant was unable to move into the new home as planned, and his registered address was incorrect for a total of 19 days. Defendant pleaded guilty to failure to comply with the 2011 SORA's registration requirements, second offense, MCL 28.729(1)(b), as a fourth-offense habitual offender, and was sentenced to six months in jail and five years of probation. Following his release from jail, defendant pleaded guilty to a probation violation and was sentenced to a term of 40 months to 15 years' imprisonment.

In 2021, the Michigan Supreme Court decided *People v Betts*, 507 Mich 527 (2021), holding that the 2011 SORA in its entirety amounted to ex post facto punishment of registrants whose registrable offenses were committed prior to the 2011 amendments. Defendant moved for relief from judgment under MCR Subchapter 6.500, asking the Tuscola County Circuit Court to apply *Betts* retroactively and to vacate his 2015 conviction of failure to register under the 2011 SORA. The trial court, Amy G. Gierhart, J., granted defendant's motion without affording the prosecution an opportunity to respond to defendant's motion and denied the prosecution's motion for reconsideration. The prosecution appealed by leave granted, and the Court of Appeals, CAVANAGH, P.J., and JANSEN and MALDONADO, JJ., reversed, holding that the trial court erred by failing to give the prosecutor appropriate time to respond and by holding that *Betts* applies retroactively. ___ Mich App ___ (September 5, 2024) (Docket No. 361488). Defendant sought leave to appeal in the Supreme Court, which granted the application. ___ Mich ___; 19 NW3d 135 (2025).

In a unanimous opinion by Chief Justice CAVANAGH, the Supreme Court *held*:

*Betts* applies retroactively to defendants on collateral review under both federal and state constitutional law because it announced a new substantive rule of law by prohibiting a certain category of punishment for a class of defendants on the basis of their status or offense.

1. The Court of Appeals correctly determined that *Betts* announced a new rule of law. The first question in analyzing retroactivity under the federal standard is whether the decision creates a new rule of law. As a general matter, judicial decisions that express new rules normally are not applied retroactively to other cases that have become final. Deciding whether a rule is "new" requires a court to determine whether a state court considering the defendant's claim at the time their conviction became final would have felt compelled by existing precedent to conclude that the rule was required by the federal Constitution. If a reasonable jurist would not have felt compelled by existing precedent, then the rule is new. In this case, Michigan courts prior to *Betts* rejected ex post facto challenges to SORA, reasoning that SORA registration requirements were a civil regulatory scheme rather than a punishment. Therefore, given the state of the law at the time defendant's conviction became final, a reasonable Michigan jurist would not have felt compelled by existing precedent to grant defendant the relief he sought.

2. Although the Court of Appeals correctly determined that *Betts* announced a new rule of law, the panel mistakenly concluded that the new rule was neither substantive nor procedural. *Betts* announced a new substantive rule of law under the federal standard. Procedural rules are not retroactively applicable, while substantive rules are retroactively applicable. Under federal law, rules that regulate only the manner of determining the defendant's culpability are procedural. Substantive rules, on the other hand, are those forbidding criminal punishment of certain primary conduct or prohibiting a certain category of punishment for a class of defendants because of their status or offense. The rule announced in *Betts* was substantive because it proscribed a class of punishment—conviction of a violation of the 2011 SORA's requirements—for a specific class of defendants, namely individuals convicted of sex offenses before 2011. The Court of Appeals reasoned that *Betts* did not constitute a new substantive rule because defendant would have been required to register his address under any iteration of SORA, but this conclusion was erroneous because the holding in *Betts* relied upon a review of the 2011 SORA *in its entirety*. Because the decision in *Betts* arose under both federal and state constitutional law, both federal and state tests for retroactive application would typically be evaluated. However, there was no need to reach an evaluation of retroactivity under the state test in this case because, while the Michigan Constitution may at times provide broader effect than federal jurisprudence affords, the Michigan Constitution may not provide fewer protections than those guaranteed under the federal Constitution. Accordingly, *Betts* also applies retroactively under state law.

Court of Appeals judgment reversed; case remanded to the trial court.

# OPINION

Chief Justice:
Megan K. Cavanagh

Justices:
Brian K. Zahra
Richard H. Bernstein
Elizabeth M. Welch
Kyra H. Bolden
Kimberly A. Thomas
Noah P. Hood

FILED May 29, 2026

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

No. 167736

GARY J. SHAVER, JR.,

      Defendant-Appellant.

BEFORE THE ENTIRE BENCH

CAVANAGH, C.J.

This case concerns the application of this Court's decision in *People v Betts*, 507 Mich 527; 968 NW2d 497 (2021). We must consider whether the principle expressed in *Betts*—that the 2011 iteration of Michigan's Sex Offenders Registration Act (SORA), MCL 28.721 *et seq*., amounted to unconstitutional ex post facto punishment pursuant to the federal and state Constitutions—must be applied retroactively to defendants on

collateral review. Under both federal and state retroactivity principles, we hold that *Betts* is retroactively applicable.

## I. BACKGROUND

## A. THE EVOLUTION OF SORA

The Michigan Legislature enacted SORA in 1994[1] with the goal of preventing the commission of future criminal sexual acts by convicted sex offenders. See MCL 28.721a. The first version of SORA created a computerized database that was confidential and accessible only by law enforcement. See MCL 28.728, as enacted by 1994 PA 295; MCL 28.730(1), as enacted by 1994 PA 295. It required individuals convicted of certain sex offenses to register for the database and to notify law enforcement of address changes. See MCL 28.723, MCL 28.724, and MCL 28.725(1), as enacted by 1994 PA 295.

Since 1994, the Legislature has amended SORA several times, increasing the availability of the registry to the public and expanding the breadth of information registrants are required to provide to law enforcement. In 1997, for example, SORA was amended to require the Department of State Police to maintain a separate computerized database consisting of a "compilation" of certain information about registered individuals, MCL 28.278(2), as added by 1996 PA 494; this compilation was to be made accessible to members of the public for in-person viewing during business hours, and the Department was also authorized to make the compilation available to the public through electronic, computerized, or other accessible means, MCL 28.730(2) and (3), as amended by 1996 PA

---

[1] See 1994 PA 295, effective October 1, 1995.

2

494. Two years later, SORA was amended to *require* that the compilation be made available to the public by electronic, computer, or similar means and to provide for both a search by name and a search by zip code. MCL 28.728(2), as amended by 1999 PA 85. In 2011, MCL 28.728 was amended to require the Department to maintain a public internet website containing certain specified information for registered individuals and to make the website available to the public by electronic, computerized, or other similar means. MCL 28.728(2) through MCL 28.728(7), as amended by 2011 PA 18. At this point, information including a registered offender's name, address, and photograph became available at the touch of a button. See MCL 28.728(2)(a) to (*l*), as amended by 2011 PA 18.

In 2005, the Legislature increased restrictions imposed by SORA through amendments that became effective in 2006 (the 2006 SORA). The 2006 SORA created "student safety zone[s]," which prohibited most registrants from living, working, or loitering within 1,000 feet of a school. MCL 28.733 and MCL 28.734, as enacted by 2005 PA 127; MCL 28.735 and MCL 28.736, as enacted by 2005 PA 121. From this point forward, members of the public could receive electronic notifications "when an individual . . . initially register[ed] under this act, or change[d] his or her registration under this act, to a location that [was] in a zip code area designated by the subscribing member of the public." MCL 28.730(3), as amended by 2006 PA 46.

In 2011, a series of significant amendments to SORA became effective (the 2011 SORA). For the first time, registrants were classified into three tiers of offenders. MCL 28.722(k) and MCL 28.722(r) to (w), as amended by 2011 PA 17. Tiers were assigned based on an individual's registrable offense. *Id*. Generally, the course of conduct that fell

3

under Tier I was less extreme than conduct categorized under Tier III.[2]  Reclassification of offenders in the tiered system also resulted in longer registration periods for certain offenses, see MCL 28.725(10) to (12), as amended by 2011 PA 17, and included lifetime registration for Tier III offenders, MCL 28.725(12), as amended by 2011 PA 17.  The 2011 SORA amendments also made offenders' tier classifications available to the public.  MCL 28.728(2)(*l*), as amended by 2011 PA 18.

Relevant to this case, the 2011 SORA also amended reporting provisions of the act.  When SORA was enacted in 1994, MCL 28.725(1)(a), as added by 1994 PA 295, provided:

> Within *10 days* after any of the following occur, an individual required to be registered under this act shall notify the local law enforcement agency in which his or her new address is located, or the state police or the sheriff's department of the individual's new address:
>
> (a) The individual *changes* his or her address.  [Emphasis added.]

The 2006 SORA kept this 10-day reporting period in place but amended the requirement to include the term "vacates":

_____

[2] For example, the 2011 SORA classified an offender as Tier I where they violated MCL 750.145c(4) (possessing or seeking and accessing child sexually abusive material), MCL 750.335a(2)(b) (aggravated indecent exposure) if the victim was a minor, or MCL 750.349b (unlawful imprisonment) if the victim was a minor, among other offenses not categorized under Tier II or Tier III.  See MCL 28.722(s), as amended by 2011 PA 17.  Offenders placed in Tier III included those convicted of a Tier II offense and an additional Tier I or Tier II offense, those who violated MCL 750.338 (gross indecency) where the victim was under 13 years of age, or those who violated MCL 750.349 (kidnapping) where the victim was a minor, among other offenses not listed under Tier I or Tier II.  See MCL 28.722(v) and (w), as amended by 2011 PA 17.

4

(1) Within *10 days* after any of the following occur, an individual required to be registered under this act shall notify the local law enforcement agency or sheriff's department having jurisdiction where his or her new residence or domicile is located or the department post of the individual's new residence or domicile:

(a) The individual *changes or vacates* his or her residence, domicile, or place of work or education . . . . [MCL 28.725(1)(a), as amended by 2005 PA 132, effective January 1, 2006 (emphasis added).]

Thereafter, the 2011 SORA dramatically shortened the timeframe in which an individual could register a change in their address from 10 days to just 3 days. MCL 28.725(1)(a), as amended by 2011 PA 17, stated:

An individual required to be registered under this act who is a resident of this state shall report in person and notify the registering authority having jurisdiction where his or her residence or domicile is located *immediately* after any of the following occur:

(a) The individual *changes or vacates* his or her residence or domicile. [Emphasis added.]

The word "immediately" was defined to mean "within 3 business days." MCL 28.722(g), as amended by 2011 PA 17.

After 2011, registrants were also required to report address changes to law enforcement in person. MCL 28.725(1), as amended by 2011 PA 17.

Importantly, the 2006 and 2011 SORA amendments have effectively been applied retroactively. That is, they imposed requirements on *all* registrants—even those whose convictions were made final before the laws were enacted.

B. FACTS AND PROCEDURAL HISTORY

In 2004, defendant, Gary J. Shaver, Jr., was either adjudicated for or convicted of three counts of third-degree criminal sexual conduct and sentenced as a juvenile.[3] Under the version of SORA in effect at the time, defendant was required to register as a sex offender, see MCL 28.723, as amended by 1999 PA 85, and notify law enforcement of any change of address within 10 days, MCL 28.725(1)(a), as amended by 2002 PA 542. Following his sentencing, defendant spent several years in various juvenile detention facilities before he was discharged from the Maxey Boys Training School in 2009.

In August 2010, defendant was convicted of failure to comply with SORA registration requirements. MCL 28.729(1)(a). He did not appeal this conviction, and it is not at issue here. Roughly a year later, the 2011 SORA went into effect, shortening the reporting period for address changes from 10 days to 3 business days. MCL 28.722(g) and MCL 28.725(1)(a), as amended by 2011 PA 17.

In September 2015, defendant was planning to move into a new home. He notified law enforcement and updated his address. However, the previous tenant of the dwelling was in the process of being evicted and continued to occupy the space beyond their designated date of departure. Consequently, defendant was unable to move into the new home as planned. Still, defendant hoped that the problem would be resolved and that he would be able to move into the home before anyone noticed the discrepancy. Unfortunately

---

[3] Defendant was 15 years old at the time, and the record is unclear whether he was adjudicated or convicted as an adult. This distinction is irrelevant for present purposes and does not impact our resolution of this case.

for defendant, the problem was not resolved, and someone did notice. Defendant's address was incorrect for a total of 19 days between September 10 and September 29, 2015. During this period, law enforcement became aware that defendant was registered at the wrong address.

In November 2015, the Tuscola County Prosecutor charged defendant for failure to comply with registration requirements under the 2011 SORA. Defendant pleaded guilty to failure to comply with the 2011 SORA's registration requirements, second offense, MCL 28.729(1)(b), as a fourth-offense habitual offender. There was a *Cobbs*[4] evaluation for a sentence cap of no more than one year in jail plus probation. Accordingly, on March 21, 2016, the trial court sentenced defendant to six months in jail and five years of probation. He did not file a direct appeal.

Following his release from jail, defendant violated the requirements of his probation by causing $400 worth of damage to a motel room. In November 2016, defendant pleaded guilty to the probation violation and was sentenced to a term of 40 months to 15 years' imprisonment. The Court of Appeals denied his application for leave to appeal for lack of merit. Defendant did not seek leave to appeal in this Court.

In 2021, this Court decided *Betts*, 507 Mich 527, holding that the 2011 SORA in its entirety amounted to ex post facto punishment of registrants whose registrable offenses were committed prior to the 2011 amendments. *Id*. at 574. In response to *Betts*, the State Appellate Defender Office created the SORA Project to work with affected individuals to

---

[4] *People v Cobbs*, 443 Mich 276; 505 NW2d 208 (1993).

7

secure stipulations from prosecutors across the state to vacate convictions that constituted ex post facto punishment. Michigan State Appellate Defender Office, *Do you have a conviction for failing to register under SORA?* <https://www.sado.org/Articles/Article/941> (accessed May 14, 2026) [https://perma.cc/6R6H-KFU6]. As part of the SORA Project, an attorney was appointed to represent defendant.

On March 28, 2022, with the assistance of counsel, defendant moved for relief from judgment under MCR Subchapter 6.500, asking the Tuscola County Circuit Court to apply *Betts* and to vacate his 2015 conviction of failing to register as required under the 2011 SORA. The trial court granted defendant's motion for relief from judgment on April 4, 2022, without affording the prosecution an opportunity to respond to defendant's motion. The court vacated defendant's conviction and sentence, dismissing the case with prejudice. The prosecution moved for reconsideration, arguing (1) that the trial court did not have the authority to grant relief from judgment without first directing the prosecution to respond to the motion within 56 days, as required under MCR 6.504(B)(4) and MCR 6.506(A), and (2) that relief under *Betts* should be prospective in nature. The trial court denied the motion for reconsideration.

The prosecution sought leave to appeal in the Court of Appeals, which granted leave to appeal and reversed the trial court's order in a published opinion. *People v Shaver*, ___ Mich App ___; ___ NW3d ___ (September 5, 2024) (Docket No. 361488). The Court of Appeals explained that the trial court erred in failing to give the prosecutor appropriate time to respond and in holding that *Betts* applied retroactively. *Id*. at ___; slip op at 10.

8

The Court of Appeals remanded the case to the trial court for the purpose of reinstating defendant's conviction. *Id.*

Defendant sought leave to appeal in this Court, arguing that the Court of Appeals erred in concluding that *Betts* did not apply retroactively. We granted the application, directing the parties to address "whether this Court's decision in [*Betts*, 507 Mich 527] applies retroactively to cases that have become final after the expiration of the period for direct review." *People v Shaver*, ___ Mich ___, ___; 19 NW3d 135 (2025).

## II. STANDARD OF REVIEW

This Court reviews a trial court's grant or denial of a defendant's motion for relief from judgment for an abuse of discretion. See *People v Johnson*, 502 Mich 541, 564-565; 918 NW2d 676 (2018). "An abuse of discretion occurs when a trial court's decision falls outside the range of reasonable and principled outcomes." *People v Franklin*, 500 Mich 92, 100; 894 NW2d 561 (2017) (quotation marks and citation omitted).

Matters of constitutional and statutory interpretation are reviewed de novo. *People v Fredell*, 516 Mich ___, ___; 33 NW3d 320, 324 (2024). Similarly, "[t]he retroactivity of a court's ruling presents an issue of law that this Court reviews de novo." *People v Maxson*, 482 Mich 385, 387; 759 NW2d 817 (2008). This Court is the ultimate authority on the meaning and application of the Michigan Constitution. *People v Bullock*, 440 Mich 15, 27; 485 NW2d 866 (1992).

## III. *PEOPLE v BETTS*

In *Betts*, the defendant pleaded guilty to second-degree criminal sexual conduct, MCL 750.520c, in 1993. *Betts*, 507 Mich at 536. The original version of SORA took

9

effect two years later. *Id*. In 2012, following the defendant's successful completion of parole, he failed to report his change of address, his email address, and his purchase of a vehicle within three days as required by the 2011 SORA. *Id*. at 536-537, citing MCL 28.725(1)(a), (f), and (g), as amended by 2011 PA 17. The defendant was later convicted of failing to register under MCL 28.729. *Id*. at 537.

The defendant eventually sought leave to appeal in this Court, challenging his failure-to-register conviction. *Id*. at 537. He argued that the changes to SORA since its 1994 inception fundamentally transformed it from regulatory in nature into a punishment scheme that imposed significant restrictions on the lives of registrants "such that the retroactive application of those provisions to him violated the Ex Post Facto Clauses of the Michigan and United States Constitutions." *Id*. at 533-534. This Court granted leave and addressed whether the retroactive application of the 2011 SORA violated the state and federal constitutional prohibitions on ex post facto laws. *Id*. at 533. We held that it did. *Id*. at 533, 574.

In *Betts*, we first determined that the Legislature intended the 2011 SORA to function as a civil regulation rather than a criminal punishment. *Id*. at 548-549. We then evaluated each *Mendoza-Martinez*[5] factor and determined that the 2011 SORA was so

---

[5] *Kennedy v Mendoza-Martinez*, 372 US 144; 83 S Ct 554; 9 L Ed 2d 644 (1963). In *Mendoza-Martinez*, the United States Supreme Court set out five factors to aid in evaluating whether a statutory scheme that the Legislature intended to impose as a civil or regulatory remedy actually is so punitive in purpose or effect that the Legislature's intention is wholly negated. *Id*. at 168-169. The Court looked to whether the scheme (1) has been historically regarded as a punishment, (2) imposes an affirmative disability or restraint, (3) promotes the traditional aims of punishment, (4) has a rational connection to a nonpunitive purpose, and (5) is excessive with respect to its purpose. *Id*. The Court has

punitive in effect that the Legislature's intention to deem it a civil regulation had been negated. *Betts*, 507 Mich at 549-562. We determined that the 2011 SORA (1) "[bore] significant resemblance to the traditional punishments of banishment, shaming, and parole because of its limitations on residency and employment, publication of information and encouragement of social ostracism, and imposition of significant state supervision," *id*. at 553; (2) "imposed onerous restrictions on registrants by restricting their residency and employment" and "imposed significant affirmative obligations by requiring extensive in-person reporting," *id*. at 556; (3) "promote[d] the traditional aims of punishment" because it "aimed to protect the public through deterrence and because its restrictions appear[ed] retributive," *id*. at 558; (4) was "connected to a nonpunitive purpose" because it sought "to further the nonpunitive purpose of public safety," *id*.; and (5) had "demanding and intrusive requirements" that were "excessive in comparison to SORA's asserted public-safety purpose," *id*. at 562. We therefore concluded that, "[c]onsidering the *Mendoza-Martinez* factors cumulatively, the 2011 SORA's aggregate punitive effects negate[d] the state's intention to deem it a civil regulation." *Id*. at 562.

Having concluded that the 2011 SORA was punitive in nature, and thus in violation of constitutional ex post facto provisions, we considered the issue of remedy. *Id*. We acknowledged that while Michigan has a legislative preference for severability, severance was not the appropriate remedy. *Id*. at 562-574. We explained that in our discussion of the *Mendoza-Martinez* factors, we examined the "aggregate effects of the 2011 SORA

---

acknowledged that these factors are neither exhaustive nor individually dispositive. *Smith v Doe*, 538 US 84, 97; 123 S Ct 1140; 155 L Ed 2d 164 (2003).

11

rather than the effects of each individual amendment." *Id*. at 564. While we were particularly concerned with the effects of amendments introducing student safety zones, the requirement that registrants report in person, the decreased reporting period of three days, and the creation of a tiered classification system, we stressed that removing these amendments would render the entire statute unworkable. *Id*. We, therefore, declined to engage in severance and to revive a prior version of SORA because these actions would encroach on the role of the Legislature. *Id*. at 565-573. Because we determined both severance and revival to be inappropriate remedies, we held that the 2011 SORA in its *entirety* could not be applied to registrants whose registrable acts occurred before the 2011 SORA was enacted. *Id*. at 573-574.

While our opinion in *Betts* made clear that the 2011 SORA was unconstitutional in its entirety, it did not address whether individuals convicted under the 2011 SORA could obtain relief on collateral review. We turn to that question now.

## IV. RETROACTIVE APPLICATION OF *BETTS*

This case involves the application of a holding grounded in both the Constitution of the United States and the 1963 Michigan Constitution. See *Betts*, 507 Mich at 542. Because the decision in *Betts* arose under both federal and state constitutional law, both federal and state tests for retroactive application would typically be evaluated. See *People v Barnes*, 502 Mich 265, 268-269, 273-274; 917 NW2d 577 (2018). However, we need not reach an evaluation of retroactivity under the state test because analysis under the federal standard leads us to conclude that *Betts* applies retroactively under both federal and state constitutional law.

12

The first question in analyzing retroactivity under the federal standard is whether the decision creates a new rule of law. *Maxson*, 482 Mich at 388, citing *Teague v Lane*, 489 US 288, 307, 310; 109 S Ct 1060; 103 L Ed 2d 334 (1989) (plurality opinion by O'Connor, J.), abrogated in part by *Edwards v Vannoy*, 593 US 255, 271-272; 141 S Ct 1547; 209 L Ed 2d 651 (2021). "As a general matter, 'judicial decisions which express new rules normally are not applied retroactively to other cases that have become final.' " *People v Robinson*, ___ Mich ___, ___; ___ NW3d ___ (February 4, 2026) (Docket No. 167595); slip op at 8, quoting *Barnes*, 502 Mich at 268. As we stated in *Maxson*, 482 Mich at 388-389:

> A case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government. Deciding whether a rule is "new" requires a court to determine whether a state court considering the defendant's claim at the time his conviction became final would have felt *compelled* by existing precedent to conclude that the rule he seeks was required by the Constitution. If a reasonable jurist would not have felt compelled by existing precedent, then the rule is new. In other words, the relevant question is not simply whether existing precedent might have *supported* the rule, but whether the rule was *dictated* by then-existing precedent. [Quotation marks, citations, and brackets omitted.]

We conclude that *Betts* announced a new rule. Prior to *Betts*, Michigan courts rejected ex post facto challenges to SORA, reasoning that SORA registration requirements were a civil regulatory scheme rather than a punishment. See *People v Golba*, 273 Mich App 603, 620; 729 NW2d 916 (2007) (noting that binding caselaw established that "SORA does not impose a penalty or punishment as a sanction for a criminal violation," but rather "is a remedial regulatory scheme furthering a legitimate state interest of protecting the public; it was not designed to punish sex offenders"); *People v Pennington*, 240 Mich App 188, 193-197; 610 NW2d 608 (2000) (holding that SORA's registration requirements, as

13

applied to adult offenders, did not constitute punishment, and did not violate the prohibition against ex post facto laws).  Therefore, given the state of the law at the time defendant's conviction became final, a reasonable Michigan jurist would not have felt compelled by existing precedent to grant defendant the relief sought here.

Having determined that *Betts* announced a new rule, we must examine whether that rule is procedural or substantive in nature.  Procedural rules are not retroactively applicable,[6] while substantive rules are retroactively applicable.  *Edwards*, 593 US at 266, 272, 276; see also *Teague*, 489 US at 307, 310, 312-313 (plurality opinion by O'Connor, J.).  Under federal law, procedural rules are those which "merely raise the possibility that someone convicted with use of the invalidated procedure might have been acquitted otherwise."  *Schriro v Summerlin*, 542 US 348, 352; 124 S Ct 2519; 159 L Ed 2d 442 (2004).  "[R]ules that regulate only the *manner of determining* the defendant's culpability are procedural."  *Id*. at 353.  Substantive rules, on the other hand, are those "forbid[ding] criminal punishment of certain primary conduct or prohibit[ing] a certain category of punishment for a class of defendants because of their status or offense."  *Montgomery v*

---

[6] Originally, under *Teague*, 489 US at 311 (plurality opinion by O'Connor, J.) (quotation marks and citations omitted), a new rule was retroactively applicable if it (1) "place[d] certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe," or (2) announced a "watershed rule[] of criminal procedure."  However, recently, the United States Supreme Court noted that in the 32 years since *Teague*, it had yet to hold a new procedural rule retroactively applicable on collateral review.  *Edwards*, 593 US at 264.  Consequently, it declared, "[c]ontinuing to articulate a theoretical exception that never actually applies in practice offers false hope to defendants, distorts the law, misleads judges, and wastes the resources of defense counsel, prosecutors, and courts. . . .  New procedural rules do not apply retroactively on federal collateral review.  The watershed exception is moribund."  *Id*. at 272.

14

*Louisiana*, 577 US 190, 206; 136 S Ct 718; 193 L Ed 2d 599 (2016) (quotation marks and citation omitted). The United States Supreme Court has explained that substantive rules "set forth categorical constitutional guarantees that place certain criminal laws and punishments altogether beyond the State's power to impose." *Id*.

In this case, the Court of Appeals correctly determined that *Betts* announced a new rule of law, reasoning that previous courts would not have felt compelled to grant defendant the relief sought. *Shaver*, ___ Mich App at ___; slip op at 6. However, the panel confusingly concluded that the new rule was neither substantive nor procedural. *Id*. at 7. The panel reasoned that the *Betts* rule was not substantive because it did not forbid certain conduct or prohibit a certain category of punishment for a class of defendants because of their status or offense. *Id*. But it also reasoned that the rule was not procedural because the rule announced in *Betts* was not a "watershed" rule of criminal procedure and did not "alter the fairness of the proceedings." *Id*.

We conclude that the rule announced in *Betts* was substantive in nature. In holding that the 2011 SORA imposed an unconstitutional ex post facto punishment, *Betts* did not concern the manner or procedure through which individuals could be convicted under the 2011 SORA. Instead, the rule expressed in *Betts* prohibited "a certain category of punishment for a class of defendants because of their status or offense." *Montgomery*, 577 US at 206 (quotation marks and citation omitted). Specifically, the *Betts* rule proscribed a class of punishment—conviction of a violation of the 2011 SORA's requirements—for a specific class of defendants—individuals convicted of sex offenses before 2011. The *Betts* rule fits within *Teague*'s core exemption—finality concerns give

way where a court ruling takes out of the hands of the government the authority to punish a group of people in a certain way.

In its retroactivity analysis, the Court of Appeals failed to acknowledge that *Betts* addressed the 2011 SORA *as a whole*. In *Betts*, we explicitly stated that "severability and revival" were inappropriate remedies in addressing the punitive features of the 2011 SORA. *Betts*, 507 Mich at 573. We stressed that the 2011 SORA could not be retroactively applied—in whole or in part—to individuals whose criminal acts occurred before the enactment of the 2011 SORA amendments. *Id*. at 573-574. In this case, the Court of Appeals reasoned that our holding in *Betts* did not constitute a new substantive rule because defendant would have been required to register his address under any iteration of SORA. The panel's conclusion was erroneous because our holding in *Betts* relied upon a review of the 2011 SORA *in its entirety*.

In sum, we hold that *Betts* applies retroactively under the federal standard because it announced a new substantive rule of law. While we acknowledge that the Michigan Constitution may at times provide broader effect than federal jurisprudence affords,[7] our Constitution may not provide *fewer* protections than those guaranteed under the federal Constitution.[8] Accordingly, we hold that *Betts* also applies retroactively under state law.

---

[7] A state "may accord broader effect to a new rule of criminal procedure than federal retroactivity jurisprudence accords." *Maxson*, 482 Mich at 392.

[8] US Const, art VI, cl 2.

## V. CONCLUSION

We hold that *Betts* applies retroactively to defendants on collateral review under both federal and state retroactivity standards. Accordingly, we reverse the Court of Appeals' decision reversing the trial court's order granting defendant's motion for relief from judgment and remand this case for further proceedings consistent with this opinion. We do not retain jurisdiction.

Megan K. Cavanagh
Brian K. Zahra
Richard H. Bernstein
Elizabeth M. Welch
Kyra H. Bolden
Kimberly A. Thomas
Noah P. Hood

17